United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 7, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-30918

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHNNY DAVIS, also known as Fat, also known as 10th Ward Fat,
also known as Project Fat, also known as Black;
RICHARD PORTER, also known as Whop,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
District Court Cause No. 00-CV-255

_____

Before GARWOOD, JONES and PRADO, Circuit Judges.

PRADO, Circuit Judge.[*]

This appeal arises from the convictions of Johnny Davis and
Richard Porter for several offenses. The indictment charged
Davis and Porter with conspiring to distribute heroin and use
firearms in connection with drug trafficking activities. In
addition, the indictment charged Porter with using a firearm to
commit murder during the course of a drug trafficking conspiracy
and charged Davis with four instances of using a firearm to

_____

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

commit murder in the course of a heroin trafficking conspiracy. The indictment also charged Davis and Porter with other firearms offenses. The government sought the death penalty against Davis. A jury convicted Porter of all counts brought against him. The jury convicted Davis of all counts brought against him except the counts involving one of the murders and the possession of a firearm on the date of that murder. The jury rejected the death penalty for Davis. Davis and Porter challenge their convictions in this appeal.

## Motion to Suppress Wiretap Evidence

Part of the evidence the government used to connect Porter and Davis to the drug conspiracies and the shootings consisted of telephone conversations obtained by wiretaps. Prior to trial, Davis and Porter moved to suppress the wiretap evidence. Davis and Porter argued that the wiretaps were unlawful under the plain language of federal and then-applicable state law because the applications for the wiretaps were signed by an assistant in the office of the Louisiana Attorney General, rather than the Attorney General himself. The district court determined the wiretaps were lawfully obtained because Louisiana law did not expressly prohibit delegation of authority to sign wiretap applications and admitted evidence obtained from the wiretaps during trial. On appeal, Davis and Porter challenge the district court's conclusion that the wiretaps were lawful. Davis and

2

Porter maintain that federal law allows wiretap authorization by a state's principal prosecuting attorney, but that it does not permit an assistant attorney general to sign a wiretap application. This court reviews the district court's conclusion de novo.[1]

Federal law governs the admissibility of state-authorized wiretap evidence in federal criminal cases.[2] The federal statute for state wiretaps provides as follows:

> The <u>principal prosecuting attorney of any State</u>, or the principal prosecuting attorney of any political subdivision thereof, <u>if such attorney is authorized by a statute of that State to make application</u> to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for . . . an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made. . . .[3]

This court previously determined the purpose of the provision naming the "principal prosecuting attorney":

> was not to designate a particular officer by name or title but to ensure the centralization of policy decisions of this type at the highest practicable levels . . . [and] "to provide for the centralization of policy relating to statewide law enforcement in the area of the use of electronic surveillance in the chief

---

[1]*See United States v. Edwards*, 303 F.3d 606, 619 (5th Cir. 2002).

[2]*See United States v. Nelligan*, 573 F.2d 251, 253 (5th Cir. 1978).

[3]18 U.S.C. § 2516 (emphasis added).

prosecuting officer of the State."[4] The court explained that state law defines the state's chief prosecuting officer for the purpose of applying for a wiretap.[5]

Louisiana law designates the criminal division of Louisiana's Department of Justice as responsible for "criminal prosecution"[6] and names the Attorney General as the executive head and chief administrative officer of the department.[7] Thus, the Louisiana Attorney General serves as the state's chief prosecuting attorney. The question remains, however, whether Louisiana has authorized only the Attorney General to apply for wiretaps.

At the time the assistant attorney general signed the application questioned here, section 1308 of Louisiana's electronic surveillance statute authorized the "attorney general, with the approval of the district attorney in whose district the interception of wire or oral communications shall take place," to apply for a wiretap.[8] The Louisiana legislature amended the

---

[4]*United States v. Pacheco*, 489 F.2d 554, 562 (5th Cir. 1974) (quoting S. REP. NO. 90-1097, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187).

[5]*See Pacheco*, 489 F.2d at 562.

[6]LA. REV. STAT. ANN. § 36:704E (West Supp. 2004).

[7]*See id*. § 36:701B.

[8]1995 La. Sess. Law Serv. 1130 (West) (recording the enactment of the Wire or Oral Communications—Authorization for Interception—Evidence of Additional Offenses Act).

4

statute the following year to expressly authorize the "attorney general, or the deputy or any assistant attorney general acting pursuant to the authorization of the attorney general" to apply for a wiretap.[9] Davis and Porter contend the amendment indicates Louisiana's intent to expand the persons who can apply for a wiretap, and that at the time the challenged applications were signed, Louisiana did not permit an assistant attorney general to sign the applications. The amendment, however, is more appropriately viewed as a clarification of Louisiana law.

Louisiana's laws of statutory construction require courts to interpret laws of the same subject matter in reference to each other.[10] Where two statutes deal with the same subject matter, courts must harmonize the statutes to the extent possible.[11] With respect to the duties and responsibilities of the Attorney General, Louisiana law indicates that the state permitted an assistant attorney general to apply for a wiretap before section 1308 was amended. Specifically, state law provides that the functions of the Attorney General shall be executed by the "offices and officers" of the state Department of Justice.[12]

---

[9]2002 La. Sess. Law Serv. 128 (West)(reporting the creation of the Louisiana Anti-Terrorism Act).

[10]*See La. Municipal Ass'n, Parish of Jefferson* v. Louisiana, No. 04-CA-0227, 2005 WL 106494, at *13 (La. Jan. 9, 2005).

[11]*See La. Municipal Ass'n*, No. 04-CA-0227, 2005 WL 106494, at *3.

[12]*See* LA. REV. STAT. ANN. § 36:701B (West Supp. 2004).

5

Louisiana law designates the heads of each division within the Department of Justice as officers of the department.[13]

In this case, the assistant attorney general who signed the challenged wiretap applications was the head of the criminal division and was thus an "officer" of the Louisiana Department of Justice within the meaning of Louisiana law. Reading these provisions together with section 1308 which defines a particular Attorney General function—applying for a wiretap—indicates Louisiana permitted the assistant attorney general who headed the criminal division to apply for a wiretap before section 1308 was amended. Because no question exists about whether the assistant attorney general who signed the challenged applications here acted under the authority of the Attorney General, this court concludes that the wiretaps were lawful even though the assistant attorney general in charge of the criminal division signed the applications.

Davis and Porter also complain that the wiretaps were unlawful because Louisiana law does not permit private contractors to monitor wiretapped communications. After the wiretaps were approved, the Drug Enforcement Agency hired private contractors who worked for a company called Lafayette Group to monitor the wiretaps. The Lafayette Group is mostly comprised of

---

[13]*See id*. § 36:701E(1) (naming officers of the department as the attorney general, the chief deputy attorney general, and the directors of the divisions of the department).

retired law enforcement officers.  The contractors monitored and transcribed intercepted conversations under the supervision of Louisiana law enforcement officers.  Because the Lafayette Group monitored the wiretaps, Davis and Porter maintain that the wiretaps were unlawful and that the district court erred by admitting the evidence obtained from the wiretaps.

Federal law governs the admissibility of state-authorized wiretap evidence in federal court.[14]  State-authorized wiretaps must comply with federal and state law.[15]  Here, no question exists about whether the wiretaps complied with federal law because the federal wiretap statute expressly authorizes the use of a government contractor to intercept a wiretap.[16]  Unlike the federal statute, the Louisiana wiretap statute does not specifically authorize government contractors to intercept wiretaps.  Instead, the Louisiana electronic surveillance statute provides for "an order authorizing or approving the interception of wire or oral communications by an <u>investigative or law enforcement officer</u> having responsibility for the investigation

---

[14]*See Nelligan*, 573 F.2d at 253-54.

[15]*See* 18 U.S.C. § 2516(2) (requiring compliance with state law).

[16]*See* 18 U.S.C. § 2518(5)(stating that a government contractor acting under the supervision of an investigative or law enforcement officer may intercept wiretaps).

of the offense as to which the application is made."[17]  The

statute defines "investigative or law enforcement officer," in

part, as a "commissioned state police officer."[18]  Davis and

Porter rely on this definition to support their argument that

Louisiana law permits only commissioned state police officers to

monitor wiretaps.

Two Louisiana courts of appeal have affirmed convictions in

which wiretap evidence gathered by the Lafayette Group was

used.[19]  Those decisions indicate that Louisiana law permits law

enforcement officers to use private contractors to monitor state

wiretaps.  In one of those decisions, a Louisiana court of

appeals rejected the argument that Davis and Porter advance

here.[20]  Even if using the Lafayette Group was improper under

Louisiana law, using private contractors to monitor wiretaps

would constitute a mere technical violation of the Louisiana

electronic surveillance statute and does not require the

---

[17]LA. REV. STAT. ANN. § 15:1308A (West Supp. 2004) (emphasis added).

[18]*Id*. § 15:1302(12).

[19]*See State v. Esteen*, 821 So. 2d 60, 72, 79 (La. App. 5 Cir. 2002) (affirming convictions without addressing the propriety of the use of the Lafayette Group); *State v. Sterling*, 825 So.2d 1279, 1290-94 (La. App. 4 Cir. 2002) (expressly upholding the use of the Lafayette Group after extensive analysis).

[20]*See Sterling*, 825 So.2d at 1290-94.

suppression of evidence under Louisiana law.[21]  This court concludes that Louisiana law permits law enforcement to use a private contractor, working under the supervision of a law enforcement officer, to monitor a wiretap.  Thus, the wiretaps were lawful.

Because the wiretaps were lawful, the evidence obtained by the wiretaps was admissible and the district court did not err by denying the motion to suppress.  Having made this determination, the court need not address Davis's and Porter's other arguments about the admissibility of the wiretap evidence as those arguments are based on unlawful wiretaps.

### Motion for Acquittal

The remaining arguments in this appeal apply only to Porter. Porter first contends that the district court erred by denying his motion for acquittal on counts 10 and 13.  Count 10 alleged that Porter used a firearm to shoot and kill Leonard Morgan during the course of the heroin distribution conspiracy charged in count 1.  Count 13 alleged that Porter used a firearm to shoot Shantell Blouin during the course of two crimes: the conspiracy to distribute heroin charged in count 1 and the distribution of crack cocaine charged in count 12.  On appeal, Porter contends

---

[21]*See State v. Neisler*, 666 So.2d 1064, 1068 (La. 1996) (treating police officers' failure to present their informant to the judge when obtaining the wiretap order, as required by the Louisiana electronic surveillance statute, as a technical violation that did not require suppression).

that there was insufficient evidence for the jury to convict him of the firearms counts and that the district court should have granted his motion for acquittal.

"A motion for a judgment of acquittal challenges the sufficiency of the evidence to convict."[22] "The evidence is sufficient if, drawing all reasonable inferences and credibility determinations in the light most favorable to the prosecution, a rational trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt."[23] This court reviews the denial of a motion for a judgment of acquittal de novo.[24]

Although Porter complains about insufficient evidence, the government presented evidence that Porter ordered Morgan's murder from prison. Viewing the evidence in the light most favorable to the prosecution, the evidence showed that Porter instructed Davis to kill Morgan because Morgan was invading Porter's heroin-trafficking territory. In particular, Bruce Baker testified that while he and Porter were incarcerated, Porter told him that he wanted Timmy Carruth to kill Morgan, but that Carruth was taking too long to do it, and therefore, he gave Davis the go ahead to

---

[22]*United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998).

[23]*United States v. Daniels*, 281 F.3d 168, 178 (5th Cir. 2002).

[24]*See Medina*, 161 F.3d at 872.

kill Morgan.  Although Porter presented evidence that Carruth killed Morgan, that evidence presented a different theory about Morgan's murder–that Carruth killed Morgan because of his own conflict with Morgan.  Choosing between these theories required the jury to weigh the credibility of the witnesses.  By convicting Davis and Porter of Morgan's murder, the jury rejected Porter's theory and accepted the government's theory.  Accepting all credibility choices in favor of the jury's verdict,[25] sufficient evidence supports the verdict on count 10.

Porter also complains that insufficient evidence exists that he used a firearm in furtherance of cocaine distribution or heroin trafficking to support count 13.  Like his argument about count 10, Porter's argument rests on the jury's credibility determinations.  The evidence presented two different theories about why Porter shot Blouin: the government contended that Porter wanted to prevent Blouin from revealing that Porter used cocaine, thereby revealing Porter's vulnerability to those who wanted to move in on his heroin-distribution territory; Porter contended that he shot Blouin to prevent her from revealing to his child's mother that he was trading cocaine with Blouin for sex.  Although the evidence in support of either theory was not overwhelming, the jury chose the government's theory and rejected Porter's theory.  Accepting all credibility choices in favor of

---

[25]*See United States v. Johnston*, 127 F.3d 380, 401 (5th Cir. 1997).

11

the jury's verdict,[26] sufficient evidence supports the verdict on court 13.

## Motion to Sever

Porter next contends that the district court erred by failing to sever counts 12 through 15 of the indictment. Counts 12 through 14 charged Porter with drug and weapons offenses in connection with Blouin's shooting. Count 15 charged Porter with being a felon in possession of a weapon—the gun Porter possessed when he was arrested for shooting Blouin. Before trial, Porter moved to sever these counts. Porter argued that trying him on these counts simultaneously with count 10, which involved the murder of Leonard Morgan, would prejudice him. Porter also argued that trying him on count 15 along with counts 1 through 3, which charged him with participating in a drug conspiracy, would prejudice him. The district court denied the motion because the disputed counts were based on allegations of the same or similar character as the alleged drug conspiracy and fell within the time frame of the alleged conspiracy. On appeal, Porter maintains that he was prejudiced by the inflammatory evidence of the shooting of Blouin and the evidence that he was a gun-carrying felon.

In reviewing the denial of a motion to sever, the court must first determine whether the initial joinder of the counts was

---

[26]*See Johnston*, 127 F.3d at 401.

12

proper under Rule 8(a) of the Federal Rules of Criminal

Procedure.[27]  Rule 8(a) provides as follows:

> Two or more offenses may be charged in the same
> indictment or information in a separate count for each
> offense if the offenses charged, whether felonies or
> misdemeanors or both, are of the same or similar
> character or are based on the same act or transaction
> or on two or more acts or transactions connected
> together or constituting parts of a common scheme or
> plan.[28]

Rule 14 further provides that if it appears that a defendant is

prejudiced by a joinder of offenses, the court may order a

separate trial of the counts.[29]  Thus, this court reviews the

denial of a motion to sever for an abuse of discretion.[30]  To

demonstrate an abuse of discretion, Porter must demonstrate a

"specific and compelling prejudice that resulted in an unfair

trial and such prejudice must be of a type against which the

trial court was unable to afford protection."[31]

Here, the indictment alleges that Davis and Porter conspired

to distribute heroin and conspired to use and carry firearms to

further the heroin conspiracy, beginning July 28, 1998 and

continuing until October 12, 2001.  Counts 12, 13, and 14 apply

---

[27]*See United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993).

[28]FED. R. CRIM. P. 8.

[29]*See* FED. R. CRIM. P. 14(a).

[30]*See Holloway*, 1 F.3d at 310.

[31]*See United States v. Pena-Rodriguez*, 110 F.3d 1120, 1128 (5th Cir. 1997).

13

only to Porter and allege separate drug possession and firearm counts that fall within the time frame of the heroin conspiracy. Because these counts are alleged as part of a common scheme or plan, the face of the indictment indicates joinder was proper.[32]

This court must also consider the "efficacy of the limiting measures taken by the trial court [and] the strength of the evidence of the defendant's guilt"[33] to determine if Porter was prejudiced. Here, Blouin's testimony that Porter shot her twelve times without provocation, Dr. Robertson's description of Blouin's injuries, and evidence that Porter had a gun when he was arrested were clearly prejudicial. Despite this prejudicial evidence, abundant evidence exists that Porter conspired to distribute heroin and conspired to use and carry firearms to further the heroin conspiracy. In addition, sufficient evidence exists that Porter ordered the murder of Leonard Morgan. The strength of evidence supporting the jury's verdict of guilt on counts 1 through 3 (drug conspiracy) and count 10 (the Morgan murder) do not indicate that the district court abused its discretion by not severing counts 12 through 15. At most, Porter has shown a quantitative disparity in evidence and the possibility of a spillover effect of Blouin's and Dr. Robertson's testimony, neither of which, without more, warrants a

---

[32]*See* FED. R. CRIM. P. 8.

[33]*United States v. McCarter*, 316 F.3d 536, 538-39 (5th Cir. 2002).

14

severance.[34]  Furthermore, the district court protected Porter against the  spillover effect by instructing the jury to "give separate consideration to the evidence as to . . . each of the crimes charged."  The district court did not abuse its discretion.

## Double Jeopardy

Porter next complains that count 10 (the Morgan murder) and count 13 (the Blouin shooting) charging the discharge of a firearm during and in relation to the commission of a drug trafficking crime are not based on separate drug trafficking offenses and thus Porter argues that his sentences for those counts violate the double jeopardy clause.  In this circuit, each firearms offense charged under 18 U.S.C. § 924(c) must be sufficiently linked to a separate drug trafficking offense to avoid violating double jeopardy principles.[35]  "The necessary linkage between a firearms charge and a drug trafficking offense is best accomplished by clearly identifying in the indictment the drug offense supporting each firearms count."[36]  This court

---

[34]*See United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir. 1994) (explaining that showing a quantitative disparity in the evidence and the mere presence of a spillover effect does not warrant severance).

[35]*See United States v. Baptiste*, 309 F.3d 274, 279 (5th Cir. 2002).

[36]*United States v. Privette*, 947 F.2d 1259, 1263 (5th Cir. 1991).

15

reviews double jeopardy claims de novo.[37]

Here, the indictment alleged in count 10 that Porter "did knowingly carry and use a firearm . . . during and in relation to the commission of a . . . conspiracy to possess with intent to distribute heroin."  The indictment alleged in count 13 that Porter "did knowingly use and carry . . . a firearm . . . during and in relation to the commission of . . . distribution of cocaine base ('crack') and conspiracy to possess with the intent to distribute heroin."  The jury's verdict and the court's instructions indicate that the jury found that count 10 (the Morgan shooting) related to the heroin conspiracy charged in count 1, and that count 13 (the Blouin shooting) related to the heroin conspiracy charged in counts 1 and to the cocaine distribution charged in count 12.  As such, count 10 and 13 are supported by more than one predicate drug trafficking offense.  Thus, double jeopardy principles were not violated.

### Sentencing

As his last argument, Porter maintains that the district court erred by sentencing him as a career criminal.  Porter complains that the district court determined that he was a career criminal based on two armed robbery convictions.  Porter maintains that robbery convictions were part of a common scheme

---

[37]*See United States v. Gonzales*, 40 F.3d 735, 737 (5th Cir. 1994).

or plan, and that although not formally consolidated for trial, they were functionally consolidated. Thus, Porter argues, the relatedness of these offenses precluded the career criminal finding. Although Porter appears to understand that any error will not decrease his sentence,[38] he complains that the career-criminal designation will negatively impact him while incarcerated.

Section 4B1.1 of the United States Sentencing Guidelines classifies a defendant as a career offender if the offense is a crime of violence or controlled substance offense and the defendant has at least two previous felony convictions for crimes of violence or controlled substance offenses.[39] The guidelines instruct a sentencing judge to count as a single prior felony conviction all those that are "related" to one another.[40] The court reviews the question of relatedness de novo,[41] deferring to the district court's determination about whether the defendant's

---

[38]Porter was sentenced under the sentencing guidelines to life for count 1; thus, designation as career criminal does not increase his sentence.

[39]*See* U.S.S.G. § 4B1.1.

[40]U.S.S.G. § 4B1.2(c) & comment 3; § 4A1.2(a)(2).

[41]*See United States v. Huskey*, 137 F.3d 283, 285 (5th Cir. 1998). Recently, the United States Supreme Court determined that the courts of appeals review sentencing decisions for unreasonableness. *See United States v. Booker*, 125 S. Ct. 738, 765-67 (2005). That determination does not appear to disturb this circuit's standard of review for determining whether two prior convictions are related.

prior convictions were functionally consolidated for sentencing.[42]

The commentary to the sentencing guidelines instructs that "prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing."[43] Porter contends that his robberies were part of a single common scheme or plan because: the robberies occurred a few blocks apart on the same morning, he targeted pedestrians in both cases, he held up both victims at gunpoint, and he was motivated by greed on both occasions. Crimes that are merely similar are not necessarily related crimes.[44] The words "scheme" and "plan" imply intent and suggest that the prior offenses were jointly planned, "or at least that it have been evident that the commission of one would entail the commission of the other as well."[45] "[A] common criminal motive or similar modus operandi will not cause separate crimes to be related, nor will crimes be related merely because they are committed to achieve a common goal, such as the support of a drug habit or

---

[42]*See Buford v. United States*, 532 U.S. 59, 64 (2001).

[43]U.S.S.G. § 4A1.2, comment 3.

[44]*See United States v. Robinson*, 187 F.3d 516, 519 (5th Cir. 1999).

[45]*Robinson*, 187 F.3d at 520.

lifestyle."[46]

Here, Porter robbed his first victim at 6:50 a.m. on April 20, 1990; he robbed the second victim on 10:25 a.m. on the same day, nearly two blocks away. Porter was arrested for the 6:50 a.m. robbery after being identified by the victim. While he was in jail on that charge, the victim of the 10:25 a.m. robbery identified Porter in a photographic lineup. The Orleans Parish District Attorney's Office charged Porter with armed robbery in two separate cases. Porter pleaded guilty to both offenses before the same judge on December 10, 1990, and received two concurrent sentences of ten years imprisonment. Despite the similarities of the offenses, nothing indicates that Porter engaged in any planning that indicated that the first robbery would entail the second robbery. Instead of joint planning, the offenses indicate that Porter robbed whomever he thought was an easy target, and that each offense was motivated by the desire for someone else's money. Nothing shows that the offenses were part of a single common scheme or plan. Accordingly, the robberies were not related. Having made this determination, the court need not consider Porter's argument that the offenses were functionally consolidated for trial. The district court did not err by sentencing Porter as a career criminal.

### Conclusion

---

[46]*Id.* at 519 (internal citations omitted).

Having considered the arguments on appeal and determined that the district court did not err, the court AFFIRMS the judgments convicting and sentencing Davis and Porter. AFFIRMED.