United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 17, 2005**

Charles R. Fulbruge III
Clerk

REVISED MAY 18, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-21220

_____

UNITED STATES OF AMERICA

             Plaintiff - Appellee

      v.

FORTINO SAUCEDO VILLEGAS

             Defendant - Appellant

_____

         Appeal from the United States District Court
          for the Southern District of Texas, Houston

_____

Before KING, Chief Judge, and BENAVIDES and STEWART, Circuit
Judges.

PER CURIAM:

     Defendant-Appellant Fortino Saucedo Villegas pled guilty and

was sentenced in the district court before the United States

Supreme Court's recent decision in United States v. Booker, 125

S. Ct. 738 (2005).  This appeal requires us to re-examine the

proper standard of review to employ in our resolution of a claim

that the district court improperly applied the Sentencing

Guidelines in calculating the sentencing range under the

previously mandatory, now advisory, sentencing guideline regime.

We re-examine our standards in order to determine the possible

- 1 -

effect, if any, of Booker on our previously announced standards in reviewing such claims.

Villegas pled guilty to being an alien in unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). At sentencing, the district court imposed a four-level sentence enhancement under UNITED STATES SENTENCING GUIDELINES § 2K2.1(b)(5) (2003) because it found by a preponderance of the evidence that Villegas possessed a firearm in connection with his use of fraudulent immigration documents. Villegas now appeals the sentence enhancement. We VACATE Villegas's sentence and REMAND for resentencing.

## I.   BACKGROUND

### A.   Factual Background

On April 26, 2003, Fortino Saucedo Villegas, a Mexican national unlawfully present in the United States, attended a gun show at the Pasadena Convention Center in Pasadena, Texas. At the show, Villegas approached Roland Kulish, who was operating a booth at the show, and he expressed an interest in purchasing a Colt semi-automatic pistol. Kulish informed Villegas that he did not have any at the show but that he did have some at his store and would bring one to the next gun show, scheduled for the following weekend. The next week, Kulish returned to the gun show and brought the firearm Villegas had requested. Villegas also returned to the gun show and sought out Kulish to purchase

the firearm.  According to Kulish and his wife, Villegas submitted three forms of identification: (1) a Texas driver's license, no. 19476405; (2) a Texas identification card, no. 12088537; and (3) a resident alien card, no. 12088537.  On the ATF form 4473, Villegas stated that he was a resident alien.  In response to line eleven, which asks for an "INS-issued alien number or admission number," Villegas listed 12088537.  The words "pictured Texas resident I.D. card" were written directly above this response.  Kulish sold the handgun to Villegas on May 3, 2003.

On June 5, 2003, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received information from the National Instant Check System ("NICS") about Villegas's firearm purchase. A check with the Bureau of Immigration and Customs Enforcement revealed Villegas's criminal immigration history.[1]  Based on this information, the ATF obtained a search warrant for the residence that Villegas had listed on his ATF forms.

On June 26, 2003, ATF agents executed the search warrant. When the agents arrived, Villegas was asleep in his bedroom.  The agents found several firearms, ammunition, and a resident alien card suspected to be counterfeit.  A search of Villegas's automobile revealed receipts for an AK-47 and the Colt handgun he had purchased from Kulish.  The agents placed Villegas under

---

[1]     In June 1999, he was allowed to depart the United States voluntarily in lieu of deportation after being found illegally present in the United States.

arrest and advised him of his constitutional rights.  He waived his right to remain silent and admitted that he was a Mexican citizen illegally present in the United States.  He also acknowledged that the gun on the headboard belonged to him and claimed he kept it for protection.  Further, he admitted to purchasing the Colt handgun from Kulish.  He stated that he had taken it to a gunsmith to have the finish changed from black to chrome.

## B.    Procedural Background

On July 24, 2003, a grand jury indicted Villegas for "being an alien illegally and unlawfully in the United States, knowingly and unlawfully possess[ing] in and affecting interstate or foreign commerce, one or more firearms . . . [i]n violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(2)." On September 8, 2003, Villegas pled guilty to this charge.  In the pre-sentence investigation report ("PSR"), the probation officer recommended that Villegas receive a four-level sentence enhancement pursuant to UNITED STATES SENTENCING GUIDELINES ("U.S.S.G." or the "Guidelines") § 2K2.1(b)(5) for using or possessing a firearm in connection with another felony offense.  The probation officer stated that "[t]he defendant falsified an ATF Form 4473 and possessed a counterfeit resident alien card for identification in order to illegally obtain possession of the Colt .38 caliber pistol . . . ."  The United States Code makes it a felony to create or possess fraudulent immigration documents.

18 U.S.C. § 1546. Thus, the probation officer reasoned, Villegas used a firearm in connection with another felony.

Prior to sentencing, Villegas filed written objections to the PSR, arguing that he did not in fact present Kulish with a counterfeit resident alien card. Villegas's factual assertions notwithstanding, the district court found that it was more likely than not that Villegas used a counterfeit resident alien card to obtain the Colt handgun. Thus, the district court accepted the PSR's recommendation of the four-level enhancement. The district court sentenced Villegas to twenty-one months imprisonment. Villegas now appeals, arguing that: (1) the district court erred as a matter of law in applying a four-level enhancement for his use of a firearm in connection with a felony; and (2) his Sixth Amendment rights were violated because the government did not bear the burden of proving beyond a reasonable doubt that he used a counterfeit resident alien card.

## II. STANDARD OF REVIEW

Villegas did not raise in the district court either his legal objection to the imposition of the four-level enhancement or his Sixth Amendment claim. Because of the lack of objections below, this court's review is for plain error. See, e.g., United States v. Aderholdt, 87 F.3d 740, 743 (5th Cir. 1996); cf. Booker, 125 S. Ct. at 769 (instructing appellate courts to apply ordinary prudential doctrines such as plain-error review). This court finds plain error when: (1) there was an error; (2) the

error was clear and obvious; and (3) the error affected the defendant's substantial rights.  United States v. Olano, 507 U.S. 725, 732-37 (1993); United States v. Mares, 2005 WL 503715, at *8 (5th Cir. Mar. 4, 2005).  "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Mares, 2005 WL 503715, at *8 (quoting United States v. Cotton, 535 U.S. 625, 631 (2002)).

In resolving Villegas's claim that the district court misapplied § 2K2.1(b)(5) of the Guidelines to enhance his sentence, we must first address the possible effect of Booker on our standard of review.  It is beyond question that before Booker, this court would have reviewed the district court's interpretation and application of the Guidelines de novo.  E.g., United States v. Martinez-Mata, 393 F.3d 625, 627 (5th Cir. 2004); United States v. Deavours, 219 F.3d 400, 402 (5th Cir. 2000); United States v. Upton, 91 F.3d 677, 687 (5th Cir. 1996); United States v. Fitzhugh, 984 F.2d 143, 146 (5th Cir. 1993).  The initial question presented here is whether this standard was somehow changed by Booker's excision of § 3742(e), which had statutorily set forth the standards for reviewing sentencing decisions, and its declaration that the remaining provisions of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., imply a standard of unreasonableness.  We conclude that when a

- 6 -

district court has imposed a sentence under the Guidelines, this court continues after <u>Booker</u> to review the district court's interpretation and application of the Guidelines de novo. We do not speak in this opinion, however, to the situation in which a district court elects to exercise its post-<u>Booker</u> discretion to impose a non-Guidelines sentence.

The Supreme Court in <u>Booker</u> instructed that although the Guidelines are now advisory rather than mandatory, § 3553(a) of Title 18 still requires the district courts to consider the Guidelines when determining a defendant's sentence. <u>See</u> <u>Booker</u>, 125 S. Ct. at 764-65, 767; <u>Mares</u>, 2005 WL 503715, at *6-7; <u>see also</u> 18 U.S.C.A. § 3553(a)(4) (West Supp. 2004).[2] A number of

---

[2] Section 3553 provides:

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-- . . .

    (4) the kinds of sentence and the sentencing range established for--

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

            (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be

other circuits have determined that the requirement that district courts still consider the Guidelines means that <u>Booker</u> did not alter the standard for reviewing a district court's interpretation and application of the Guidelines.  <u>See</u> <u>United States v. Doe</u>, 2005 WL 428916, at *2 & n.5 (10th Cir. Feb. 24, 2005); <u>United States v. Hazelwood</u>, 2005 WL 415681, at *1, *7 (6th Cir. Feb. 23, 2005); <u>see also</u> <u>United States v. Hughes</u>, 2005 U.S. App. LEXIS 4331, *10-11, 40-42 (4th Cir. Mar. 16, 2005) (<u>on panel reh'g</u>) (holding that district courts post-<u>Booker</u> must still correctly calculate the sentencing range under the Guidelines; reviewing district court's application of the Guidelines de novo).  In <u>Doe</u>, the district court calculated the Guidelines range but decided to depart upwardly.  The Tenth Circuit determined that the district court had erred as a matter of law in upwardly departing because it did not fully take into account the defendant's cooperation with the government when making its sentencing decision.  <u>Doe</u>, 2005 WL 428916, at *2.  In setting forth the standard of review, the Tenth Circuit noted: "When reviewing a district court's application of the Sentencing Guidelines, we review legal questions de novo . . . ."  <u>Id.</u> (emphasis omitted).  By way of a footnote, the court then stated:

> incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . . .

18 U.S.C.A. § 3553 (Supp. 2004).

> During the pendency of this appeal the Supreme Court decided United States v. Booker which rendered the Sentencing Guidelines advisory only and replaced the prior standard of appellate review with review for unreasonableness. Although the Guidelines are now advisory, district courts must still "consult the Guidelines and take them into account when sentencing." Thus, appellate review continues to encompass review of the district court's interpretation and application of the Guidelines. Because we conclude that the district court erred as a matter of law under 18 U.S.C. §§ 3553(a) and 3661, we need not address any further impact of Booker on appellate review.

Id. at *2 n.5 (internal citations omitted). Similarly, in Hazelwood, 2005 WL 415681, at *1, the Sixth Circuit stated that "[w]hen reviewing sentencing decisions, we review the district court's . . . conclusions of law de novo." The appellate court reasoned that Booker did not affect its review because it left intact the requirement that district courts consult the Guidelines. Id. at *7. The court then found that the district court had erred as a matter of law by imposing a two-level enhancement under the Guidelines for threatening death, and it vacated and remanded for resentencing.[3] Id. at *7-8.

This court recently reached a similar conclusion regarding Booker's effect on the standard of review in an unpublished opinion, United States v. Davis, 2005 U.S. App. LEXIS 3770, *23-24 & n.41 (5th Cir. Mar. 7, 2005) (unpublished). In that case,

---

[3] It is worth noting that both Doe and Hazelwood involved preserved error because the defendant objected below. Although Doe does not address the issue, Hazelwood reviewed the error for harmlessness as instructed by the Booker Court. Conversely, we review Villegas's sentence for plain error because he did not object below.

the district court sentenced the defendant as a career criminal under § 4B1.1 of the Guidelines, which "classifies a defendant as a career offender if the offense is a crime of violence or controlled substance offense and the defendant has at least two previous felony convictions for crimes of violence or controlled substance offenses." Davis, 2005 U.S. App. LEXIS 3770, at *23. The defendant claimed that the district court erred in applying the Guidelines because his two prior felonies were related and therefore should have been considered only a single offense under the Guidelines. This court agreed that the Guidelines "instruct a sentencing judge to count as a single prior felony conviction all those that are 'related' to one another." Id. We stated that the question of relatedness continues to be reviewed de novo after Booker, noting that although the Supreme Court "determined that the courts of appeals review sentencing decisions for unreasonableness[,] [t]hat determination does not appear to disturb this circuit's standard of review for determining whether two prior convictions are related." Id. at *24 & n.41 (internal citations omitted). Reviewing the relatedness question de novo, the court found that the defendant's prior offenses were not related under § 4B1.1 of the Guidelines. Id. at *27. Therefore, this court found that the district court did not err in applying the Guidelines, and we affirmed the sentence imposed by the

district court.[4]  Id.

The remedial opinion in Booker does not foreclose or otherwise caution against this approach.  It is true that the Court excised § 3742(e), which statutorily set forth the standards of review, and stated that the remaining statute implied a reasonableness standard for reviewing sentences. Booker, 125 S. Ct. at 765-66.  It is also true that we must apply both Booker's constitutional and remedial holdings to all cases pending on direct review.  Id. at 769.  Even so, nothing suggests that Booker injected a reasonableness standard into the question whether the district court properly interpreted and applied the Guidelines or that an appellate court no longer reviews a district court's interpretation and application of the Guidelines de novo.

Booker left standing all sections of the Sentencing Reform Act other than §§ 3553(b)(1)[5] and 3742(e).[6]  Booker, 125 S. Ct.

---

[4]     This court took a similar approach in United States v. Montgomery, 2005 WL 469607 (5th Cir. Mar. 1, 2005).  In Montgomery, the court reviewed de novo the district court's application of a statutory minimum provision, 18 U.S.C. § 924(e), as implemented by U.S.S.G. § 4B1.4.  Id. at *2.  The court found that the district court erred as a matter of law in finding that a prior conviction qualified as "a crime of violence."  Id. at *2-5.  On that ground, the court vacated the defendant's sentence, stating that it therefore need not address the impact of Booker on the defendant's alternative argument that the sentence enhancement violated his Sixth Amendment rights.  Id. at *5.

[5]     Section 3553(b)(1), which made the Guidelines mandatory, provided:

(b) Application of guidelines in imposing a sentence.--

- 11 -

(1) In general.--Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

18 U.S.C.A. § 3553(b)(1) (West Supp. 2004).

[6]     Section 3742(e) provided:

(e) Consideration.--Upon review of the record, the court of appeals shall determine whether the sentence--

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and

(A) the district court failed to provide the written statement of reasons required by section 3553(c);

(B) the sentence departs from the applicable guideline range based on a factor that--

- 12 -

at 764.  Thus, § 3742(a) still remains in force, providing that "[a] defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines."  18 U.S.C. § 3742(a)(2).  Moreover, § 3742(f) still provides: "If the court of appeals determines

> (i) does not advance the objectives set forth in section 3553(a)(2); or
>
> (ii) is not authorized under section 3553(b); or
>
> (iii) is not justified by the facts of the case; or
>
> (C) the sentence departs to an unreasonable degree from the applicable guidelines range, having regard for the factors to be considered in imposing a sentence, as set forth in section 3553(a) of this title and the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
>
> (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts.  With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.

18 U.S.C.A. §3742(e) (West Supp. 2004).

- 13 -

that . . . the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate."  18 U.S.C. § 3742(f)(1).  The survival of these provisions further counsels that we maintain our review of the district court's interpretation and application of the Guidelines when it has imposed a sentence under the Guidelines.[7]

### III.   DISCUSSION

Villegas argues on appeal that the district court erred as a matter of law when it enhanced his sentence under U.S.S.G. § 2K2.1(b)(5) for using or possessing a firearm in connection

---

[7]      This conclusion is informed in part by this court's pre-2003 practice of reviewing sentencing departures from the range established by the Guidelines.  Before the PROTECT Act of 2003, Pub. L. 108-21, 117 Stat. 650, amended § 3742(e) to provide for a complete de novo review of all departures, this court reviewed departures in two steps: first, we asked whether the departure was proper under the Guidelines, which was reviewed de novo; and second, we asked whether the degree of the departure was reasonable, which was reviewed under an abuse of discretion standard.  United States v. Fierro, 38 F.3d 761, 775 n.7 (5th Cir. 1994) ("We review the degree or reasonableness of a departure for abuse of discretion.  However, whether the ground for departure is proper is a question of law reviewable de novo because it involves an interpretation of the Sentencing Guidelines." (emphasis omitted)); United States v. Caldwell, 985 F.2d 763, 765 (5th Cir. 1993) (per curiam); see also United States v. Rybicki, 96 F.3d 754, 757-58 (4th Cir. 1996) ("Because a court's classification of potential bases for departure is a matter of guideline interpretation, we review such rulings de novo in the context of our ultimate review for abuse of discretion.").  Analogously, post-Booker, as part of its overall review of the sentence, this court reviews a district court's interpretation and application of the Guidelines in the same manner as we did pre-Booker.

- 14 -

with another felony offense.  Specifically, Villegas contends that this enhancement provision does not apply to him because the firearms that he possessed were not used to facilitate the other felony offense at issue here (his use of a fraudulent immigration document) and because the presence of the firearm did not make the commission of the other felony inherently more dangerous. Further, Villegas argues that he did not yet possess the firearm at the time he used the fraudulent immigration document, so he could not have used the firearm in connection with his use of forged documents.

In reviewing Villegas's claim for plain error, our first and second steps are to determine whether the district court committed an error and whether that error was plain.  See Olano, 507 U.S. at 732-34; Mares, 2005 WL 503715, at *8.  As explained above, in making this determination, we review the district court's interpretation and application of the Guidelines de novo. Section 2K2.1(b)(5) provides for a four-level sentence enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . ." U.S.S.G. § 2K2.1(b)(5) (2003).  For the purposes of § 2K2.1(b)(5), a felony offense "means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained."  Id. at cmt. n.7.  Villegas's use of fraudulent immigration documents qualifies as a felony offense

under this definition because it is punishable by imprisonment for a term exceeding one year. See 18 U.S.C. § 1546. The question, however, is whether Villegas possessed the firearm "in connection with" his use of the fraudulent documents.

Although the Guidelines do not define the phrase "in connection with" as it appears in § 2K2.1(b)(5), we must give this language its ordinary and natural meaning. See United States v. Condren, 18 F.3d 1190, 1196 (5th Cir. 1994). This circuit's precedent interpreting § 2K2.1(b)(5) supports Villegas's argument that § 2K2.1(b)(5) was meant to address circumstances where the presence of a firearm facilitated, and made inherently more dangerous, another crime. In United States v. Armstead, 114 F.3d 504, 512 (5th Cir. 1997), this court noted that § 2K2.1(b)(5) was added in 1991 out of concern for crimes of violence and drug offenses and the use of firearms in connection with those offenses. In Armstead, the defendants pled guilty to the charge of stealing firearms from a licensed firearms dealer. 114 F.3d at 506. The district court enhanced their sentences for using the firearms in connection with another felony (the burglary of the store). Id. at 506-07. We held that the enhancement was proper under § 2K2.1(b)(5): once the defendants acquired possession of the firearms during the burglary, they possessed the weapons in connection with the burglary because they could have used the guns to facilitate the crime and they created an increased concern for public safety. Id. at 511-12.

- 16 -

However, in United States v. Fadipe, 43 F.3d 993 (5th Cir. 1995), the defendant was convicted of bank fraud and unlawful possession of a firearm.  The district court levied a four-level sentence enhancement pursuant to § 2K2.1(b)(5) because at the time he committed the fraud, he possessed a firearm in his automobile.  Id. at 994.  On appeal, we reversed the imposition of the enhancement because there was no evidence that the firearm was used in connection with the bank fraud.  Id. at 995.  Even though the defendant had the firearm in his car at the time he was arrested, it was not reasonable to assume that the defendant possessed the weapon to prevent others from stealing his fraudulent bank checks.  Id.  We specifically noted that "[t]he presence of a gun near instruments of bank fraud does not create the same automatic increase in the danger of physical violence that exists when drugs and guns are present together."  Id. at 994-95.  Similarly, in United States v. Houston, 364 F.3d 243 (5th Cir. 2004), the defendant was arrested for unlawful possession of a firearm.  At the time of his arrest, he possessed counterfeit government identification documents.  Id. at 245.  We nevertheless held that "[t]he possession of a false government instrument, like the bank fraud at issue in Fadipe, is not an offense that inherently provokes the type of violent confrontation compelling offenders to protect themselves with a firearm."  Id. at 250.

Thus, our precedent indicates that § 2K2.1(b)(5) applies

- 17 -

only when the defendant's use or possession of a firearm may have facilitated or made more dangerous the other felony offense. It is clear that Villegas's possession of a firearm did nothing to facilitate his use of a fraudulent identification card or to make it a more dangerous crime. This is particularly so considering the chronology of events in this case: Villegas's offense of using false immigration documents occurred the day before he actually acquired possession of the firearm. Hence, Villegas's possession of a firearm was not in connection with his use of a counterfeit alien registration card for the purposes of § 2K2.1(b)(5), and the district court erred in imposing a sentence resulting from its incorrect application of the Guidelines. Moreover, because Fadipe and Houston clearly establish that the sentence enhancement under § 2K2.1(b)(5) was inappropriate in this instance, we also find that the district court's error was plain, in the sense that it was clear or obvious. Thus, Villegas has satisfied the first two prongs of the plain-error test.

The third step in the plain-error analysis requires us to consider whether the district court's error affected Villegas's substantial rights. See Olano, 507 U.S. at 734-35; Mares, 2005 WL 503715, at *8. At this point, it is important to keep in mind the relevant error. The error in question here is the district court's misinterpretation and misapplication of the then-mandatory Guidelines by finding that an enhancement was

- 18 -

appropriate under § 2K2.1(b)(5).  Thus, it is different than the error in <u>Booker</u> (i.e., the Sixth Amendment error of enhancing a sentence based on judge-found facts under the mandatory Guidelines) and <u>Fanfan</u> (application of the mandatory Guidelines absent Sixth Amendment error).[8]  For that reason, the question in the third step of the plain-error test is not the same as it was in <u>Mares</u>, 2005 WL 503715--i.e., it is not whether the defendant can show a reasonable probability that the district court would have imposed a different sentence had the Guidelines been advisory instead of mandatory.  Instead, the proper question here is whether the defendant can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence.  We find that Villegas has satisfied this burden.

In the absence of the four-level enhancement, Villegas's sentencing range would have been reduced from between twenty-one and twenty-seven months to between ten and sixteen months.  Because these two sentencing ranges do not overlap, the district court's error necessarily increased Villegas's sentence and thus affected his substantial rights.  <u>See, e.g.</u>, <u>Aderholt</u>, 87 F.3d at 744 (holding that the defendant's substantial rights were affected by the court's erroneous application of the Guidelines

_____

[8]    It is true that Villegas also alleges a Sixth Amendment <u>Booker</u> error on the ground that the district court found facts to enhance his sentence and imposed the sentence under the mandatory Guidelines.  However, we must first address the antecedent error that the district court committed by misapplying the Guidelines.

because a correct application of the Guidelines would have resulted in the defendant receiving a lesser sentence). Villegas has satisfied his burden under the plain-error test because he has shown that the district court misapplied the Guidelines in calculating the sentencing range, the court imposed a sentence under the then-mandatory Guidelines based on that miscalculation, and the sentence was higher than the correct range under the Guidelines.[9] Under these circumstances, there is at least a reasonable probability that the district court would have imposed a lesser sentence if it had properly applied the Guidelines. Furthermore, because the district court's error clearly affected Villegas's sentence, we also find that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. See, e.g., Aderholt, 87 F.3d at 744 (finding that sentencing calculation errors affected "the fairness and integrity of this judicial proceeding"). Thus, we conclude that the district court committed plain error when it imposed a four-level sentence enhancement pursuant to U.S.S.G. § 2K2.1(b)(5). Accordingly, we must vacate his sentence and remand for resentencing. See, e.g., United States v.

---

[9]     Moreover, the record contains nothing to suggest that the district court would have imposed the twenty-one month sentence had it not been required by the Guidelines, nor does it include any explanation of why the court would have considered such a sentence appropriate even if it were contrary to the Guidelines.

- 20 -

<u>Antonakopoulos</u>, 2005 WL 407365, at *9 (1st Cir. Feb. 22, 2005).[10]

Although the district court on remand is not bound by the Guidelines, it must consider them, and in doing so, it ordinarily is required to calculate the proper Guidelines range. <u>See, e.g.</u>, <u>Booker</u>, 125 S. Ct. at 764-65, 767; <u>Mares</u>, 2005 WL 503715, at *7 ("This duty to 'consider' the Guidelines will ordinarily require the sentencing judge to determine the applicable Guidelines range even though the judge is not required to sentence within that range."); <u>United States v. Shelton</u>, No. 04-12602, 2005 WL 435120, at *6 n.9 (11th Cir. 2005).

Because we have determined that the district court's misapplication of the Guidelines requires a remand in this case, we need not consider Villegas's argument that his Sixth Amendment rights were violated.

### IV. CONCLUSION

For the foregoing reasons we VACATE Villegas's sentence and

---

[10]   In <u>Antonakopoulos</u>, the First Circuit stated:

[W]here in a pre-<u>Booker</u> world we would have remanded for procedural or substantive error in the application of the Guidelines, that would normally lead to a <u>Booker</u> remand. Where, as in pre-<u>Booker</u> cases, we engage in plain-error review and find it clear that the district court has made a sentencing error under the Guidelines, the correction of which ordinarily would have led to a lower sentence in the pre-<u>Booker</u> era, there is a strong argument for remand. This means that in some cases we will continue to review pre-<u>Booker</u> type claims of Guideline error where it is plausible that the error committed affected the sentence.

2005 WL 407365, at *9 (internal citation and footnote omitted).

REMAND for resentencing consistent with this opinion.