**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carlos GARCIA, Defendant–Appellant.**

**No. 91–5684.**

United States Court of Appeals,
Fifth Circuit.

May 28, 1992.

John R. Carter, Asst. Federal Public De-
fender and Lucien B. Campbell, Federal
Public Defender, San Antonio, Tex., for
defendant-appellant.

Richard L. Durbin, Jr., LeRoy Morgan
Jahn, Asst. U.S. Attys. and Ronald F. Eder-
er, U.S. Atty., San Antonio, Tex., for plain-
tiff-appellee.

Before SNEED,[1] REAVLEY, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Carlos Garcia appeals only his sentence, contending that the two prior convictions relied on for his career offender enhancement constitute only one conviction, pursuant to the Sentencing Guidelines. We AFFIRM.

## I.

In April 1991, Garcia pleaded guilty to distribution of heroin in violation of 21 U.S.C. § 841(a)(1). In issue at sentencing was the application of the career offender enhancement based on two prior state convictions for distribution of heroin.[2] Although the Presentence Investigation Report (PSI) did not recommend enhancement, the government urged it.[3] Garcia asserted, as in his earlier objection, that the prior convictions were "related", as defined in U.S.S.G. § 4A1.2, and therefore counted for only one prior conviction for career offender purposes, based on his contentions, taken from the commentary to § 4A1.2, that the state convictions were part of a common scheme or plan and that they had been consolidated for sentencing. The district court found to the contrary and sentenced Garcia, as a career offender, to 168 months' imprisonment.[4]

## II.

The guidelines provide for enhanced punishment for "career offenders". One of the criteria for such status is that "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.[5] Section 4B1.2(3) defines "two prior felony convictions" and provides that,

in determining whether prior convictions are to be counted separately, § 4A1.1(a)–(c) controls. Section 4A1.1, which concerns computing the defendant's criminal history category, speaks of "prior sentences". Section 4A1.2 defines a "prior sentence" and provides that "[p]rior sentences imposed in *unrelated cases* are to be counted separately. Prior sentences imposed in *related cases* are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." U.S.S.G. § 4A1.2(a)(2) (emphasis added).

The official commentary to § 4A1.2 states that "prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n. 3). This court looks to that commentary on this question. *See, e.g., United States v. Castro–Perpia*, 932 F.2d 364, 365 (5th Cir. 1991); *United States v. Ainsworth*, 932 F.2d 358, 360 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 327, 116 L.Ed.2d 267 (1991), *and cert. denied*, —— U.S. ——, 112 S.Ct. 346, 116 L.Ed.2d 286 (1991); *United States v. Metcalf*, 898 F.2d 43, 46 n. 6 (5th Cir.1990). Garcia maintains that his two prior state convictions for delivery of heroin are related; that they resulted from offenses that (1) were part of a common scheme or plan and (2) were consolidated for trial and sentencing; and that, therefore, the district court erred in finding that they were not related and in applying the career offender enhancement.

This court will uphold a sentence unless it was imposed in violation of law; imposed as a result of an incorrect application of the sentencing guidelines; or out-

---

1. Senior Circuit Judge of the Ninth Circuit, sitting by designation.

2. At the time of the federal ("instant") offense, Garcia was on parole from the state convictions.

3. Before sentencing and after Garcia filed his objection to the recommended enhancement, the PSI had been amended by deleting the recommendation.

4. The applicable guideline sentencing range without career offender status was 21–27 months; with it, 168–210 months. U.S.S.G. Ch. 5, Pt. A (Sentencing Table); § 4B1.1.

5. The other criteria are that "the defendant was at least eighteen years old at the time of the instant offense, [and] the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense". U.S.S.G. § 4B1.1.

side the range of the applicable sentencing guideline and is unreasonable. *United States v. Buenrostro*, 868 F.2d 135, 136–37 (5th Cir.1989) (citing 18 U.S.C. § 3742(d) and (e)), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Application of the guidelines is a question of law subject to *de novo* review. *E.g., Castro–Perpia*, 932 F.2d at 365. However, factual findings by the district court are reviewed for clear error. *E.g., Metcalf*, 898 F.2d at 44.

■ The initial query is the standard of review for a district court finding on whether prior convictions are related.. Although the question is in large part one of fact, this court, without expressly ruling, has viewed this issue as an application of the guidelines, subject to *de novo* review. This much is certain; it has not applied the clearly erroneous standard. *See Castro–Perpia*, 932 F.2d at 366 ("[t]he district court correctly applied the Sentencing Guidelines"); *Ainsworth*, 932 F.2d at 361 ("[w]e thus hold that the district court did not err"); *United States v. Paulk*, 917 F.2d 879, 884 (5th Cir.1990) (the district court "was not [in] error"); *Metcalf*, 898 F.2d at 46 ("we conclude that they were not consolidated for sentencing"); *United States v. Flores*, 875 F.2d 1110, 1114 (5th Cir.1989) ("[w]e find that [the defendant] has more

than two convictions that are 'unrelated' as to their trials and sentences"). Accordingly, we apply that *de novo* standard here, even though a strong—indeed compelling—argument can be made that the clearly erroneous standard of review is appropriate for whether prior convictions are related. The circuits are split on this question; [6] and this court, in an appropriate case, should consider giving this issue en banc consideration.[7]

### A.

■ Garcia's first basis for contending that the two state convictions were "related" is that they were part of a "common scheme or plan". In 1989, he pleaded guilty to two separate indictments for delivery of heroin: the first delivery was to one undercover officer for $25.00; the second, to another undercover officer for $19.00. The two sales occurred within a nine-day period and in the same vicinity. In the first, Garcia had to go elsewhere to retrieve the heroin; in the second, he had it with him.

Although the guidelines do not define "common scheme or plan", Garcia contends that the term is to be used for § 4A1.2 purposes as it is used for the relevant conduct guideline, § 1B1.3(a)(2).[8] We have

---

**6.** The Eighth Circuit applies the clearly erroneous standard, *see United States v. Mau*, 958 F.2d 234, 236 (8th Cir.1992) ("The district court's decision [regarding whether prior convictions are related] is a factual determination subject to the 'clearly erroneous' standard of review."); and the Seventh Circuit appears to be leaning towards that standard. *See United States v. Brown*, 962 F.2d 560, 565 (7th Cir.1992). The Tenth Circuit applies a hybrid standard of review. *United States v. Villarreal*, 960 F.2d 117, 118 (10th Cir. Mar. 23, 1992) (district court findings regarding the facts of the prior convictions are factual, however, "[t]he meaning of the word 'related' is a legal issue that we review de novo"). The Ninth and Second Circuits also review *de novo* the determination of relatedness. *See United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir.1990) (application of career offender status is reviewed *de novo*); *United States v. Lopez*, 961 F.2d 384, 385 (2d Cir.1992) (relatedness viewed *de novo*).

**7.** At the sentencing hearing, which was videotaped, the district judge did not enter detailed

findings of fact. On the consolidation prong, he stated only that the cases were not consolidated. Accordingly, it is most questionable whether the findings of fact were sufficient for review under a clearly erroneous standard.

**8.** Section 1B1.3 provides:

**Relevant Conduct (Factors that Determine the Guideline Range)**
(a) *Chapters Two (Offense Conduct) and Three (Adjustments)*. Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

interpreted the relevant conduct language broadly. *See, e.g., United States v. Thomas,* 932 F.2d 1085, 1088 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991), *and cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 447 (1991), *and cert. denied,* —— U.S. ——, 112 S.Ct. 887, 116 L.Ed.2d 791 (1992). Garcia maintains that we should do the same for "common scheme or plan" in determining whether convictions were related; and that, because the heroin deliveries involved almost identical conduct and occurred within the same area and within days of each other, they were part of a common scheme or plan.

Even if we were to adopt Garcia's analysis and broadly construe the language of § 4A1.2, an issue we need not reach, the facts underlying the two state convictions do not establish a common scheme or plan. Although the facts surrounding the cases may be similar, " '[s]imilar crimes are not necessarily related crimes.' " *United States v. Mau,* 958 F.2d 234, 236 (8th Cir. 1992) (quoting *United States v. Lowe,* 930 F.2d 645, 647 (8th Cir.1991)). "[A] relatedness finding requires more than mere similarity of crimes." *United States v. Brown,* 962 F.2d 560, 564 (7th Cir.1992). Garcia's "argument . . . would lead to the illogical result that a defendant who is repeatedly convicted of the same offense on different occasions could never be considered a career offender under the guidelines." *Mau,* 958 F.2d at 236.

Garcia executed two distinct, separate deliveries of heroin. Although the crimes may have been temporally and geographically alike, they were not part of a common scheme or plan that would preclude imposition of career offender status.

> (2) *solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;*
> (3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions; and

**B.**

■ Alternatively, Garcia asserts that the two cases are "related" because they were "consolidated for trial and sentencing": the two indictments had consecutive numbers and were filed on the same day; the same attorney was appointed to represent Garcia in both cases and submitted one statement for both representations; the clerk scheduled the two cases in the same court for the same date and time; the plea agreements for the two cases refer to each other; and the ten year sentences for each conviction run concurrently.[9]

Garcia notes the consecutive indictment numbers, the scheduling of the cases for the same day and time, the plea agreements which refer to each other, and the concurrent sentences to support his position. The government emphasizes the separate indictments and docket numbers, the separate plea agreements and sentences, the lack of an order of consolidation, and the simultaneous resolution of a pending motion to revoke parole for a 1985 heroin possession case, as discussed in note 9, *supra.*

This court has already "rejected the proposition that cases must be considered consolidated 'simply because two convictions have concurrent sentences.' " *Ainsworth,* 932 F.2d at 361 (quoting *Flores,* 875 F.2d at 1114). Likewise, "[w]e also rejected the notion that 'sentencing on two distinct cases on the same day necessitates a finding that they are consolidated.' " *Id.* (quoting *Metcalf,* 898 F.2d at 46). Although Garcia contends that his case presents a unique combination of these factors, especially a close factual relationship between the convictions, this precedent obviously weakens his argument.

Garcia maintains, in any event, that consolidation in Texas can occur two ways:

> (4) any other information specified in the applicable guideline.
> (Emphasis added.)

**9.** At the same sentencing proceeding, the state court also sentenced Garcia to seven years for violation of his parole, to run concurrently with the sentences for the above convictions.

formally, through the operation of Chapter 3 of the Texas Penal Code; or informally, through the acquiescence or consent of a defendant. According to Garcia, an order of consolidation is not necessary for either procedure.

Under Chapter 3 of the Texas Penal Code, formal consolidation may occur when the state moves to consolidate two or more offenses "arising out of the same criminal episode". Tex.Penal Code § 3.02(a). Section 3.01, as amended in 1987, defines criminal episode as "the commission of two or more offenses ... [that are] committed pursuant to the same transaction or pursuant to two or more transactions that are *connected to constitute a common scheme or plan;* or ... are the repeated commission of the same or similar offenses." Tex.Penal Code § 3.01 (emphasis added).[10] If the defendant fails to object to the written motion to consolidate, consent is implied. *Garza v. State,* 687 S.W.2d 325, 330 (Tex.Crim.App.1985); *Yohey v. State,* 801 S.W.2d 232, 244 (Tex.App.—San Antonio 1990, pet. ref'd). The state, however, did not file the required notice of consolidation for the two state convictions. *See* Tex.Penal Code § 3.02(b). Therefore, there was no consolidation motion to which Garcia could have consented.

As for the informal consolidation that Garcia maintains can occur absent such a motion, he cites cases which hold that "pending indictments may be consolidated in a single trial with the consent or absent an objection by and with the implied consent of the defendant." *Garza,* 687 S.W.2d at 330. In several of these cases, however, the state *did move* for formal consolidation; and the defendant failed to object. *See id.; Gordon v. State,* 633 S.W.2d 872, 874 (Tex.Crim.App. [Panel Op.] 1982). Moreover, *Yohey,* rendered in 1990, states that "[t]here is no authorization in Texas law for any other type of consolidation than that provided by Chapter 3 of the Texas Penal Code". 801 S.W.2d at 244. Therefore, Garcia's contention that informal consolidation can occur in Texas is unpersuasive.[11]

Although the concurrent sentences and sentencing on the same day are factors to consider when evaluating whether cases are consolidated, "we ... see little reason automatically to consider cases to be consolidated where state law is to the contrary. Instead, a district court must determine for itself whether the crimes in fact were related...." *Ainsworth,* 932 F.2d at 361. We agree with the district court; the evidence does not establish that the state cases were consolidated for trial or sentencing. The state did not move to consolidate the cases; and the state court treated the two convictions separately, entering separate sentences, judgments and plea agreements.

### III.

The judgment of the district court is AFFIRMED.

---

10. Garcia's state offenses occurred in 1988. Prior to 1987, "criminal episode" was defined to apply only to offenses set out in Title 7 of the Texas Penal Code, Offenses Against Property. Tex.Penal Code Ann. § 3.01 (1974), *amended by* Acts 1987, 70th Leg., ch. 387, § 1 (eff. Sept. 1, 1987).

11. Garcia argues that the facts of this case are almost identical to those in *Castro–Perpia,* where the defendant was sentenced in state court in 1988 for cocaine offenses that occurred in 1984 and 1987. 932 F.2d at 365. Apparently, at the same proceeding, his 1985 sentence of probation for another cocaine offense was revoked; he received concurrent sentences for all three cases. *Id.* at 365–66. Upon a subsequent

federal conviction, the district court determined that the 1985 offense was not related to the other two, but that the 1984 and 1987 cases were related. *Id.* at 365. Garcia maintains that this consolidation must have been informal because at that time, Texas Penal Code § 3.01 did not provide for consolidation of nonproperty offenses.

*Castro–Perpia* is not persuasive, because the relatedness of the 1984 and 1987 offenses was not an issue on appeal. This court's opinion merely stated that the cases were consolidated; it did not discuss what procedures led to the consolidation. 932 F.2d at 365. Moreover, § 3.01 has been amended to allow for consolidation of nonproperty offenses.