**REVISED SEPTEMBER 16, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-50271

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SEDRICK ROBINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

August 30, 1999

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellant Sedrick Robinson challenges the sentence imposed upon him by the district court for possession with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Robinson contends that the district court erred in sentencing him as a career offender based on his two prior convictions for delivery of cocaine. The Government first argues that Robinson cannot bring this appeal because, as a term of his plea agreement, he waived his right to appeal his sentence. Alternatively, the Government contends that the district court properly sentenced Robinson as a career offender. We hold that

Robinson has the right to appeal because the record does not demonstrate that he knowingly and voluntarily waived his right to appeal. We also hold that the district court erred in relying on convictions that were related in sentencing him as a career offender.

## I.

On April 16, 1997, Robinson was indicted for possession with intent to distribute in excess of 50 grams of cocaine base (Count One) and cocaine (Count Two), in violation of 21 U.S.C. § 841(a)(1). Robinson pleaded guilty to Count One pursuant to a written plea agreement with the Government.

Robinson's Presentence Investigation Report ("PSI") determined that Robinson was a career offender under the United States Sentencing Guidelines, based on his two prior state convictions for delivery of cocaine. Robinson objected to the PSI, arguing that the two prior convictions were related and thus should be counted as one conviction for guidelines purposes. The district court overruled the objection and adopted the PSI's calculation, sentencing Robinson, as a career offender, to 262 months imprisonment. Robinson appeals his sentence.

## II.

The Government first contends that Robinson may not appeal his sentence because he waived his right to appeal his sentence in the plea agreement. The written plea agreement included the following waiver-of-appeal provision:

4.  The Defendant is aware that his sentence will be imposed

2

in conformity with the <u>Federal Sentencing Guidelines and Policy Statements</u>, which may be up to the maximum allowed by statute for his offenses. He is also aware that the sentence to be imposed is not subject to parole. By entering into this agreement, and as a term of this agreement, the Defendant voluntarily and knowingly waives his right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742; provided, however, that this waiver does not extend to his right to appeal any upward departure pursuant to U.S.S.G. § 5K2.0 from the Guidelines range found by the district court.

Although a defendant may waive his right to appeal as part of a plea agreement with the Government, this waiver must be "'informed and voluntary.'" *United States v. Baty*, 980 F.2d 977, 978 (5th Cir. 1992) (quoting *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992)). Robinson argues that because the district court did not explain the waiver-of-appeal provision at the plea colloquy, the record does not demonstrate that the waiver was informed or voluntary.

Our review of the record confirms that the district court's discussion of the plea agreement with Robinson at the Rule 11 hearing included no explanation of the waiver of appeal provision.[1]

---

[1]During Robinson's Rule 11 hearing, the following exchange took place:

The Court: Okay. Now has there been a plea agreement entered into between you and your lawyer and the lawyer for the government?
The Defendant: Yes, sir, Your Honor.
The Court: All right. Ms. Garcia [lawyer for the Government], what is the plea agreement?
Ms. Garcia: Your Honor, in exchange for Mr. Sedrick Robinson's plea to Count One of the indictment the government has agreed not to oppose a three-level reduction for acceptance of responsibility, not to oppose his request that he be sentenced at the bottom of the applicable guideline range, and at the time of sentencing, with leave of Court, move to dismiss Count Two of the indictment.

This Court has stated that "a defendant's waiver of her right to appeal deserves and, indeed, requires the special attention of the district court." *Baty*, 980 F.2d at 979. "It is up to the district court to insure that the defendant fully understands her right to appeal and the consequences of waiving that right." *Id.* See also *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994).

It is clear from the plea colloquy that the district court did not ask Robinson whether he had read the written plea agreement and understood it. More importantly, the district court did not warn Robinson that he was waiving his right to appeal. Although the Government contends that the district court did mention the waiver-of-appeal provision later during the Rule 11 hearing, the record shows only that, during a general discussion of the Sentencing Guidelines, the district court stated: "And even though in your plea agreement you might have waived the right to appeal, if I sentence you above the guidelines then you still have the right to appeal, if I sentence you below the guidelines then the government has the right to appeal." It is clear to us that this was part of the district court's explanation of the role the sentencing guidelines play in sentencing. This general statement does not

---

The Court: All right. Mr. Vaughn [lawyer for Robinson], is this your understanding of the plea agreement?
Mr. Vaughn: Yes, sir, Your Honor.
The Court: All right. Mr. Robinson, do you understand it?
The Defendant: Yes, I do, Your Honor.
The Court: And you agreed to it?
The Defendant: Yes, I do, Your Honor.

4

satisfy the requirement that the court "insure that the defendant fully understand her right to the waiver-of-appeal and the consequences of waiving that right." *Baty*, 980 F.2d at 279. Therefore, we conclude that the record made at the Rule 11 hearing was not adequate to demonstrate that Robinson knowingly and voluntarily waived his right to appeal. The waiver is therefore not effective.[2]

### III.

We now turn to the substance of Robinson's appeal. Robinson's PSI originally calculated the offense level for his possession with intent to distribute cocaine base offense as 31 and his criminal history category as I. The applicable guidelines sentencing range for Robinson would have been 108-135 months imprisonment. However, the PSI noted that Robinson had two prior state convictions for delivery of cocaine and determined that Robinson should therefore be sentenced as a career offender. As a career offender, Robinson had an offense level of 34, a criminal history category of VI, and an imprisonment range of 262-327 months. The district court sentenced Robinson to 262 months imprisonment.

---

[2]Although not binding in this case, this conclusion is consistent with the amendment to Federal Rule of Criminal Procedure 11, which has been adopted by the United States Supreme Court and, in the absence of congressional action, will become effective on December 1, 1999. Amended Rule 11(c) provides that: "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following: . . . (6) the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence."

Robinson's two earlier state offenses of delivery of cocaine occurred in June 1992. The first delivery occurred on June 17, 1992, when Robinson sold a $50 "rock" of cocaine to undercover agent Stephen Fuchs. At the time of this first delivery, Robinson told Fuchs that he would pay Fuchs $50 for every additional customer that Fuchs referred to Robinson. The second delivery then occurred on June 24, 1992, when Robinson sold another $50 "rock" of cocaine to undercover agent Darrell Sanders, who Fuchs referred to Robinson. Both offenses occurred within a two block area in San Antonio, Texas. Robinson pled guilty to the two offenses on May 13, 1993, and received identical sentences of 10 years probation. Both probation terms were terminated early on January 11, 1995.

At sentencing, Robinson objected that he should not be sentenced as a career offender. He argued that his two prior state convictions for delivery of cocaine should be treated as one conviction for purposes of the career offender provision of the guidelines because they are "related" offenses within the meaning of the guidelines. The district court found that Robinson's prior convictions were not related and sentenced him as a career offender.

We review *de novo* the district court's finding that Robinson's prior convictions were not related. *United States v. Ford*, 996 F.2d 83, 85 (5th Cir. 1993); *United States v. Garcia*, 962 F.2d 479, 481 (5th Cir. 1992). The sentencing guidelines provide for enhanced punishment for career offenders. The term "career

6

offender" is defined as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Section 4B1.2(3) defines "two prior felony convictions" and refers to § 4A1.2, which explains whether a defendant's felony convictions are to be counted separately. Section 4A1.2 provides that "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." U.S.S.G. § 4A1.2(a)(2).

The commentary to § 4A1.2 states that "prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n. 3). Robinson argued in the district court and to this court on appeal that his prior convictions were part of a common scheme or plan because they involved the same type of crime, were committed within days of each other and within the same vicinity, were investigated by a single agency, and because the commission of the second crime could not have occurred but for the commission of the first.

Unfortunately, the guidelines do not define the term "common scheme or plan." Nor does the commentary to § 4A1.2 make clear what type of scheme or plan is needed to make separate offenses

7

related. *United States v. Butler*, 970 F.2d 1017, 1024 (2d Cir. 1992). However, we start from the bedrock premise that crimes that are merely similar are not necessarily related crimes. *See Ford*, 996 F.2d at 86; *Garcia*, 962 F.2d at 482. *See also Butler*, 970 F.2d at 1024 ("the term 'single common scheme or plan' is not synonymous with 'same course of conduct'"); *United States v. Brown*, 962 F.2d 560, 564 (7th Cir. 1992) ("a relatedness finding requires more than mere similarity of crimes"). Additionally, a common criminal motive or similar modus operandi will not cause separate crimes to be related, *see United States v. Lowe*, 930 F.2d 645 (8th Cir. 1991), nor will crimes be related merely because they are committed to achieve a common goal, such as the support of a drug habit or lifestyle, *see United States v. Chartier*, 970 F.2d 1009, 1016 (2d Cir. 1992).[3]

It is helpful to consider our decisions in *Garcia* and *Ford* in more detail to understand how we arrived at the conclusion that crimes of a similar nature are not necessarily related. In *Garcia*, the defendant had committed two distinct, separate deliveries of heroin within a nine-day period and within the same vicinity. This Court held that although temporally and geographically alike, the crimes were not part of a common scheme or plan. We stated that

---

[3] *Cf. United States v. Houser*, 929 F.2d 1385 (9th Cir. 1990) (defendant's prior convictions are part of a single common scheme or plan if the crimes were of a similar nature, occurred within a short period of time, were the result of a single investigation, and were charged separately only because they had occurred in different jurisdictions).

the defendant's argument "'would lead to the illogical result that a defendant who is repeatedly convicted of the same offense on different occasions could never be considered a career offender under the guidelines.'"  *Garcia*, 962 F.2d at 482 (quoting *United States v. Mau*, 958 F.2d 234, 236 (8th Cir. 1992)).

Similarly, in *Ford*, this Court, relying on *Garcia*, held that the defendant's four prior state methamphetamine delivery convictions were not part of a common scheme or plan.  All four of the charges arose from sales to the same undercover officer during a six-day period; two of the sales occurring on the same date and at the same motel.  The Court found that "each sale was a separate transaction, separated by hours, if not days.  The fact that the buyer was the same did not make the sales 'related' any more than if Ford made four separate trips to the same H.E.B. in one week to buy groceries--there was no common scheme or plan, simply convenience and experience."  *Ford*, 996 F.2d at 85.

It is clear from *Garcia* and *Ford* that the term "common scheme or plan" must mean something more than repeated convictions for the same criminal offense. Indeed, we agree with the Seventh Circuit's statement in *United States v. Ali*, 951 F.2d 827 (7th Cir. 1992), that the words "scheme" and "plan" are "words of intention, implying that the [prior offenses] have been jointly planned, or at least that it have been evident that the commission of one would entail the commission of the other as well."  *Id.* at 828. However, "[a] crime merely suggested by or arising out of the

9

commission of a previous crime is not . . . related to the earlier crime in the special sense of being part of a common scheme or plan." *Id.*

In the present case, Robinson's two prior convictions are more than merely repeated transactions, temporally and geographically alike. Although the two crimes occurred only seven days apart and within the same vicinity, they contain a factual nexus not present in *Garcia* and *Ford*. The situation in the present case is similar to the hypothetical scenario described in *Ali*, where the prior crimes are "jointly planned" or where the "commission of one crime entailed the commission of the other." *Id.* Specifically, Robinson planned the commission of the second crime during the course of the first crime: while selling the "rock" of cocaine to Agent Fuchs, Robinson told Fuchs that he would pay him $50 if Fuchs would refer other customers to Robinson. Robinson intended or planned, at the time he committed the first offense, to sell drugs to other customers Agent Fuchs might refer to him. The second offense was not a spur of the moment occurrence, *see United States v. Woods*, 976 F.2d 1096, 1099 (7th Cir. 1992), but rather an action proposed and planned at the time of the first offense. Additionally, the second offense could not have occurred but for the first offense-- the commission of the second offense therefore necessarily entailed the commission of the first offense. In other words, Robinson could not have made the second delivery of cocaine to Agent Sanders had he not sold the first "rock" to Agent Fuchs who then referred

Sanders to Robinson.

In light of the fact that Robinson jointly planned the two deliveries of cocaine, we conclude that Robinson's two prior state convictions are related as being part of a common scheme or plan and should be treated as one conviction. Therefore, the district court erred in sentencing Robinson as a career offender. Accordingly, we vacate Robinson's sentence and remand for resentencing.

## IV.

Because the record does not reflect that Robinson knowingly and voluntarily waived his right to appeal, that waiver is ineffective. We also conclude that the district court erred in sentencing Robinson as a career offender. Therefore, we vacate Robinson's sentence and remand for resentencing.

VACATED and REMANDED.