United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 29, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 05-10261

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AQUILES ALVARADO-SANTILANO,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

Before REAVLEY, GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Aquiles Alvarado-Santilano ("Alvarado") appeals his sentence for illegal reentry after

deportation pursuant to 8 U.S.C. §§ 1326(a) and (b)(2). The district court found that Alvarado had

been previously convicted of an aggravated felony, determined that the statutory maximum sentence

was therefore twenty years as opposed to two, and increased Alvarado's base offense level by sixteen

levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). The district court then assessed two criminal

history points pursuant to U.S.S.G. § 4A1.1(b) in light of Alvarado's previous conviction for making

a false claim of United States citizenship. Alvarado challenges both of these aspects of his sentence.

Alvarado, a Mexican citizen, was removed from the United States in December, 2002. Immigration authorities found him again in the United States in June, 2004. Alvarado pleaded guilty to one count of illegal reentry after deportation in violation of 8 U.S.C. § 1326. The Pre-Sentence Report ("PSR") set Alvarado's base offense level at 8, added 16 levels because Alvarado had been previously deported after a conviction for involuntary manslaughter, and then subtracted three levels for acceptance of responsibility. The PSR also assessed two criminal history points for a 2001 conviction for making a false claim of citizenship.[1] Alvarado did not object to the PSR at his sentencing hearing. The district court sentenced Alvarado to 79 months, a sentence within the Guideline range as calculated in the PSR. Alvarado now argues that the district court erred in failing to treat his conviction for involuntary manslaughter as an element of his offense and for treating his 2001 conviction as a prior sentence rather than relevant conduct.

Because Alvarado did not object to the PSR in the district court, we review his sentence for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Villegas*, 404 F.3d 355, 358 (5th Cir. 2005). We have discretion to correct an error not raised in the district court if: 1) there was error; 2) that was clear or obvious; and 3) that affected substantial rights. *Id.* The Supreme Court has directed appellate courts only to exercise that discretion, however, when the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 736-37 (1993).

Alvarado argues that the district court plainly erred by treating his prior conviction for involuntary manslaughter as a sentencing factor rather than as an element of his offense. He

---

[1]     Alvarado's 2002 removal followed his seven-month sentence for this conviction.

concedes, however, that his argument is foreclosed by *United States v. Almendarez-Torres*, 523 U.S. 224 (1998), and he raises the error only to preserve it for possible review by the Supreme Court. The Supreme Court has not overruled *Almendarez-Torres*. *See Shepard v. United States*, __ U.S. __, 125 S.Ct. 1254, 1262-63 & n.5 (2005). We must follow *Almendarez-Torres* "unless and until the Supreme Court itself determines to overrule it." *See United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000). In light of the continuing validity of *Almendarez-Torres*, the district court did not err in not treating Alvarado's prior conviction as an element of his § 1326 offense.

Alvarado also challenges the district court's addition of two criminal history points pursuant to U.S.S.G. § 4A1.1(b) based on his prior sentence for falsely claiming to be a United States citizen. A prior sentence is defined as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Application Note 1 to § 4A1.2 explains that "[c]onduct that is part of the offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3." Alvarado contends that his claim of false citizenship is conduct relevant to the instant offense and that therefore his sentence for that conduct cannot be used to support additional criminal history points under § 4A1.1(b).

Alvarado first argues that his false claim of citizenship is relevant conduct under § 1B1.3(a)(1)(A). That subsection defines relevant conduct as "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Alvarado contends that: 1) all of a § 1326 defendant's prior illegal reentries constitute relevant conduct under § 1B1.3(a)(1)(A) and are thus part of the offense of conviction; 2) his false claim of citizenship was the means by which he effected an earlier illegal reentry and therefore was conduct

relevant to that earlier reentry; and 3) therefore the false claim of citizenship in 2001 was a part of his illegal reentry in 2004. The government disputes the first of these contentions, arguing that the instant offense includes only Alvarado's most recent illegal reentry and that a claim of false citizenship three years earlier cannot be construed as relevant conduct.

Alvarado's argument turns on whether his 2001 illegal reentry occurred during the offense of conviction. We therefore determine when his illegal reentry in 2001 was completed and when the instant offense began.

This court first addressed the duration of § 1326 violations in *United States v. Santana-Castellano*, 74 F.3d 593 (5th Cir. 1996). In that case, the defendant challenged the imposition of additional criminal history points for having committed a § 1326 violation while under a criminal justice sentence. *Id*. at 596; *see also* U.S.S.G. § 4A1.1(d). The defendant was under no such sentence when he entered the United States. *Id.* at 595. He was, however, found by INS officials while serving a state sentence. *Id.* The court began its analysis by determining "when exactly Santana committed the § 1326 offense of 'being found in' the United States." *Id.* at 597. After considering the purpose of the statute, the court stated that "[w]here a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is 'found' is a continuing offense because it is 'an unlawful act set on foot by a single impulse and operated by an unintermittent force.'" *Id.* at 598 (quoting *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166 (1939)). Moreover, "[a] continuing offense, by its very nature, does not terminate until the date of the indictment or the voluntary termination of the illegal activity." *Id.* (quoting *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995)). The sentence enhancement was appropriate because the court determined that Santana had committed some part of the § 1326

offense while under a state criminal sentence. *Id.*

This court followed *Santana-Castellano* in *United States v. Reyes-Nava*, 169 F.3d 278 (5th Cir. 1999). In that case, the defendant was not under criminal sentence either when he entered the country or when he was found, but the district court enhanced his sentence pursuant to § 4A1.1(d) because he was under a sentence during some portion of his illegal stay here. *Id.* at 279. In affirming the enhanced sentence, the court stated that "a previously deported alien who reenters and remains in the United States, commits a continuing offense until he is found." *Id.* at 280 (citing *Santana-Castellano*, 75 F.3d at 598).

Alvarado relies on a subsequent case, *United States v. Corro-Balbuena*, 187 F.3d 483 (5th Cir. 1999), which he claims requires us to hold that his multiple illegal reentries were a single continuing offense. In that case, the defendant had a long history of deportation and illegal reentry. *Id.* at 484. In 1994, he again illegally reentered the United States, this time while still on probation for driving while intoxicated. *Id.* at 484-85. After reentering, the defendant was charged with and convicted of auto theft and served a short sentence in state prison. *Id.* at 485. The defendant claimed to have then voluntarily left the United States, only to illegally reenter again the next year. *Id.* Pursuant to § 4A1.1(d), t he district court assessed two criminal history points because the 1994 reentry was committed while the defendant was under a criminal justice sentence, i.e. probation. *Id.* at 484. On appeal, this court affirmed. *Id.*

The *Corro-Balbuena* court began its analysis by citing *Santana-Castellano* and *Reyes-Nava* for the propositions that § 1326 "sets forth a continuing offense" and that the "offense begins at the time the defendant illegally re-enters the country and does not become complete unless or until the defendant is found by [immigration officials] in the United States." *Id.* at 485. As we do in the

-5-

instant case, the *Corro-Balbuena* court recognized that the "core dispute in [that] case concern[ed] when Corro-Balbuena's continuing § 1326 offense began." *Id.* at 486. Concluding that the offense began sometime before the most recent illegal reentry, the court stated:

> Each or any of these multiple surreptitious and illegal reentries may be used, either as part of the instant offense or as relevant conduct, to support the district court's application of § 4A1.1(d). While it may be impossible to pinpoint the exact date on which Corro-Balbuena illegally reentered the Unites States, Corro-Balbuena's illegal reentries and his continued unlawful presence in the United States are adequately illustrated by his multiple criminal convictions in Texas state court. Corro-Balbuena's naked assertions that he voluntarily departed the United States in 1995 and did not return until shortly before he was found by the INS in January 1998 may be sufficient to create a new and independent offense. That conduct is insufficient, however, even if true, to extinguish a pre-existing and continuing offense arising from prior illegal reentries.

*Id.*

The *Corro-Balbuena* court, it seems then, adopted two contrary positions in the same opinion, stating both that being found by immigration officials completes a § 1326 violation and also that any of Corro-Balbuena's illegal reentries could be used to mark the beginning of his current violation even though he had been found by immigration officials after all but one of them. Such internal contradiction leaves this court with the difficult task of identifying the holding of the case and determining the extent to which it controls the outcome here.

We note that, on the facts of the case, the broad statement that "each or any" of Corro-Balbuena's previous reentries could be used as the start-date of his violation was unnecessary. What was essential to the result was that his 1994 reentry, which he effected while on probation, was a part of his current reentry. Corro-Balbuena was not found by immigration officials between that reentry and the "finding" that led to the case before the court. Rather, he either stayed in the United States the entire time or else left voluntarily and returned sometime later.

The broad holding of *Corro-Balbuena* also conflicts with both *Santana-Castellano* and *Reyes-Nava*. When the holding of a prior case is indeterminate, we will not interpret it in a way that is patently at odds with earlier precedent.[2] Recognizing that we cannot give effect to every statement in *Corro-Balbuena*, then, we read that case to stand only for the proposition that a § 1326 violation continues even if the defendant voluntarily leaves the country and subsequently returns. Any portion of the opinion that implies that being found by immigration officials does not complete a § 1326 violation is dicta and would not be binding on this court even if it were a correct statement of the law. *See Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998) ("[W]here two previous holdings or lines of precedent conflict, 'the earlier opinion controls and is the binding precedent in the circuit' " (quoting *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991)).

*Corro-Balbuena*, then, does not control the primary issue in this case, specifically whether two illegal reentries constitute two separate §1326 violations if, in the interim between them, the defendant is found in the United States by immigration officials and deported. Alvarado has made no other argument that would cause us to deviate from *Santana-Castellano* and *Reyes-Nava*, under which a § 1326 violation is complete and no longer ongoing once the defendant is found by immigration authorities. Borrowing language from *Corro-Balbuena*, then, we hold that being found in the United States by immigration officials is sufficient to extinguish a pre-existing and continuing offense arising from prior illegal reentries.[3] Because the initial § 1326 violation is extinguished, a

---

[2]    The parties have not briefed the question of whether *Corro-Balbuena* conflicts with earlier precedent even when given a narrow reading. Because we do not find *Corro-Balbuena* directly on point, we express no opinion on that issue.

[3]    We find nothing contrary to this holding in *United States v. Vargas-Garcia*, No. 05-10474 (5th Cir. 2005) (pre-circulated *Booker* opinion).

subsequent reentry gives rise to a separate offense, and neither offense should be considered a part of the other for purposes of the sentencing guidelines. This result enjoys support in several other circuits. *See United States v. Bahena-Guifarro*, 324 F.3d 560, 564 (7th Cir. 2003) (two illegal reentries are two separate and distinct offenses); *United States v. Clarke*, 312 F.3d 1343, 1346 (11th Cir. 2002) (§ 1326 violation is complete when defendant is found by immigration authorities); *United States v. Godinez-Rabadan*, 289 F.3d 630, 632 (9th Cir. 2002) (same); *United States v. Mercedes*, 287 F.3d 47, 54 (2d Cir. 2002) (same).

Alvarado's argument that his false claim of citizenship is conduct relevant to his offense of conviction under § 1B1.3(a)(1) falls apart once we establish that his two most recent illegal reentries constitute two separate offenses. His 2001 false claim of citizenship cannot fairly be characterized as an act "that occurred during the commission of [his 2004 illegal reentry], in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *See* U.S.S.G. § 1B1.3(a)(1).

Alvarado next argues that his claim of false citizenship is relevant conduct under § 1B1.3(a)(2) because his offenses would have been grouped under § 3D1.2(d) and are "part of the same course of conduct or common scheme or plan." *See* U.S.S.G. § 1B1.3(a)(2). The commentary to § 1B1.3 states that "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 comment. (n.9(A)). Alvarado stresses that the instant offense and his false claim of citizenship share a common purpose and that they create the same social harm. *See* U.S.S.G. § 3D1.2, comment. (n. 2) ("For offenses in which there are no identifiable victims, (e.g. drug or immigration offenses, where

society at large is the victim), the 'victim' . . . is the societal interest that is harmed."). As the government argues, however, "'scheme' and 'plan' are 'words of intention, implying that the [offenses were] jointly planned, or at least that it have been evident [*sic*] that the commission of one would entail the commission of the other as well.'" *United States v. Robinson*, 187 F.3d 516, 520 (5th Cir. 1999) (quoting *United States v. Ali*, 951 F.2d 827, 828 (7th Cir. 1992)). Alvarado has not demonstrated that his 2001 and 2004 offenses were jointly planned or that either entailed the other, and so he has not demonstrated a common scheme or plan.

Alvarado similarly fails to establish that his 2001 and 2004 offenses were a common course of conduct, which the commentary explains is "a single episode, spree, or ongoing series of events." U.S.S.G. § 1B1.3, comment. (n. 9(B)). Factors to consider when determining if offenses comprise a common course of conduct include their degree of similarity, their regularity, and the time interval between them. *Id.* "Where one of the above factors is absent, a stronger presence of at least one of the other factors is required." *Id.* As the facts do not suggest that his offenses were especially similar or regular, the significant time that passed between Alvarado's illegal reentries precludes a finding that they constituted a common course of conduct. Because Alvarado's offenses were neither part of a common scheme or plan nor part of a common course of conduct, his claim of false citizenship was not conduct relevant to his 2004 illegal reentry under § 1B1.3(a)(2).

Alvarado's false claim of citizenship does not qualify as relevant conduct and cannot be considered part of the offense of conviction. The district court therefore did not err in adding criminal history points based on Alvarado's conviction. For that reason, we AFFIRM the sentence imposed by the district court.