United States Court of Appeals
Fifth Circuit

**F I L E D**

April 10, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

———————————————

No. 06-40219
consolidated with 05-40435, 05-41188, 06-40009 and 06-40010

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS J. HINOJOSA,

Defendant-Appellant.

———————————————

Appeals from the United States District Court
for the Southern District of Texas

———————————————

Before DAVIS and STEWART, Circuit Judges, and CRONE[*], District Judge.

W. EUGENE DAVIS, Circuit Judge:

Defendant Carlos J. Hinojosa appeals several aspects of his sentence for money laundering imposed after a guilty plea. Hinojosa's principal argument relates to the determination of the value of the funds for purposes of U.S.S.G. § 2S1.1, and the grouping of offenses included in that determination under U.S.S.G. § 3D1.2(d) and U.S.S.G § 1B1.3(a)(1) and (2). Finding no error in the district court's factual finding of relevant conduct, we affirm that part of the sentence predicated on that finding. Because the government concedes error in the order of restitution, we vacate the sentence in that respect and remand for resentencing.

———————————

[*]District Judge of the Eastern District of Texas, sitting by designation.

In October 2003, Francisco Loya, Jr., and Carlos Jorge Hinojosa, also known as Carlos J. Hinojosa, were indicted on multiple charges including conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 (Count 1), securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x as well as aiding and abetting the same in violation of 18 U.S.C. § 2 (Count 2), wire fraud in violation of 18 U.S.C. §§ 2 and 1343 (Counts 3-6), mail fraud in violation of 18 U.S.C. §§ 2 and 1341 (Counts 7-30) and money laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(i) (Counts 31-45).

In August 2005, Hinojosa entered a plea of guilty to Count 31 of the indictment, which alleged that Hinojosa had committed the crime of money laundering by conducting a financial transaction with the proceeds of the charged conspiracy, specifically the writing of a check on a bank account on July 14, 1998, payable to one of the named victims of the conspiracy in the amount of $4,000.

The prosecutor offered the following summary as a factual basis for the plea at Hinojosa's rearraignment/guilty plea proceeding: (1) Hinojosa operated a fraudulent investment program through the entities Economic Solutions and El Crucero in which he promised investors high rates of return and security of principal through investment in secret offshore trading accounts through various banks; (2) the program offered by Hinojosa does not exist; (3) Hinojosa represented falsely that his co-defendant Loya was a certified public accountant; (4) Hinojosa and Loya collected money from investors and sent the funds to another entity, which would return the investors funds to be distributed to earlier investors as purported profits in the form of a Ponzi scheme; (5) Hinojosa, as part of this scheme, caused a purported profits check to be sent to a

named victim on July 14, 1998, as recited in the indictment; and (6) Hinojosa operated this investment scheme from January 1998 through November 15, 1998, when the State of Texas Securities Board ordered the operations to cease.

The prosecutor further stated that Hinojosa operated a second fraudulent investment scheme under the company name Solegasa del Norte during 2002. The prosecutor described the program as one in which Hinojosa took money from "members" in the purported investment program and told the members he would invest the money in existing high-yield investment programs. The programs were not in place and did not exist. No criminal charges were filed in connection with this scheme. At rearraignment, the district court admonished Hinojosa that restitution in the amount of $3,559,493.90 could be ordered. This restitution amount relates only to the charged fraud scheme, not the Solegasa del Norte scheme.

In its PSR, the Probation Office, using the 1998 Sentencing Guidelines began with a base offense level of 23 under U.S.S.G. § 2S1.1(a)(1) because Hinojosa was convicted of violating 18 U.S.C. § 1956(a)(1)(A)(i). The PSR applied an enhancement of 9 offense levels because the value of the funds involved in the two schemes exceeded $10,000,000. As a basis for this amount, the PSR stated that the Texas State Securities Board "confirmed the total amount of relevant conduct attributable to Hinojosa is $11,068,502.57." It is clear from the record that this amount includes losses attributable to the 2002 Solegasa del Norte fraud. The PSR also includes an attached list of victims and the amounts of their losses. The PSR further added a four-level enhancement for Hinojosa's role as a leader or organizer of a criminal activity involving more than five participants or that is otherwise extensive, pursuant to U.S.S.G. § 3B1.1(a). The PSR reduced the offense level by two levels for acceptance of responsibility under U.S.S.G. §

3

3E1.1(a). As a consequence, Hinojosa had a total offense level of 34. With Hinojosa's Criminal History Category of I, this produced a Guideline imprisonment range of 151 to 188 months. The PSR further recommended restitution in the amount of $6,659,493.90, which is based on losses resulting from the scheme underlying the indictment and the amount attributed to the 2002 Solegasa del Norte scheme.

Hinojosa filed two sets of written objections to the PSR. In the first set of objections, Hinojosa objected, among other things, to the attribution of amounts associated with Solegasa del Norte as relevant conduct and to the value of the funds exceeding $10,000,000, stating that the government had failed to prove such amount. Counsel for Hinojosa renewed these objections at sentencing. With regard to Solegasa del Norte, counsel argued that losses attributable to that scheme were not relevant conduct because that scheme was not charged in the indictment, was not a common plan or scheme with the charged conduct, and did not have common victims. Counsel further challenged the reliability of the evidence related to the calculation of losses exceeding $10 million, stating that the appropriate amount of loss was the $6.5 million set forth in the judgment with the State of Texas, as reflected in the PSR. Counsel further argued that the $10 million amount was improper because it included losses attributable to Solegasa del Norte and because no documentary proof was provided supporting the amount.

At sentencing, the district court overruled the objections. The district court stated that Solegasa del Norte losses were properly treated as relevant conduct because it was a common scheme with the charged conduct. The district court further found that Hinojosa did not object to the reference to Solegasa del Norte at the rearraignment. Upon further questioning of the government, the district court noted that the Probation Officer's response indicated that the Texas

4

State Securities Board investigators stated that evidence established a total loss amount of $7,968,502.57 attributable to the charged conspiracy and $3,100,000 attributable to the uncharged Solegasa del Norte conduct. The district court determined that the combined amount was properly treated as the total loss. The district court imposed a sentence of imprisonment of 169 months, followed by three years of supervised release, a $100 special assessment and ordered restitution in the amount of $6,659,493.90, which includes net losses attributable both to the conspiracy charged in the indictment and to the Solegasa del Norte scheme.

Hinojosa appeals.

II.

The district court's interpretation and application of the Sentencing Guidelines is reviewed de novo and its factual determinations for clear error. United States v. Rodriguez-Mesa, 443 F.3d 397, 400-01 (5th Cir. 2006). "A finding by the district court that unadjudicated conduct is part of the same course of conduct or common scheme or plan is a factual determination subject to review by this court under the clearly erroneous standard." United States v. Ocana, 204 F.3d 585, 589 (5th Cir. 2000).

III.

U.S.S.G. § 2S1.1, which applies to money laundering offenses, provides for an enhancement based on the value of the funds involved in the offense. U.S.S.G. § 2S1.1(b)(2). Hinojosa and the government agree that in determining the value of the funds laundered, losses attributable to fraud can be grouped with losses attributable to money laundering if the offenses can be properly grouped under § 3D1.2(d). See U.S.S.G. § 1B1.3(a)(1) and (2). U.S.S.G. § 1B1.3 groups offenses (1) "that occurred during the commission of the offense of conviction, in

5

preparation for that offense, or in the course of attempting to avoid detection or responsibility for

that offense," and acts (2) "that were part of the same course of conduct or common scheme or

plan as the offense of conviction." Hinojosa's offenses were grouped under the second category.

The Commentary to U.S.S.G. § 1B1.3 states that "common plan or scheme" and "same

course of conduct" are closely related concepts:

> (A) Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; i.e., the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of modus operandi (the same or similar computer manipulations were used to execute the scheme).

> (B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).

U.S.S.G. § 1B1.3, comment 9.

Hinojosa argues that the 2002 Solegasa del Norte transactions are not relevant conduct to

6

the 1998 offense of conviction.   He points to the 3 to 4 year interval between the two schemes and that the two schemes did not involve the same victims or accomplices.  Hinojosa concedes that the purpose and modus operandi may be similar but contends that there is no evidence that the two schemes were jointly planned or that the commission of one entailed the commission of the other.

As an initial matter we question Hinojosa's assertion that in order to be relevant conduct the two offenses must be jointly planned or that commission of one must entail the commission of the other.  No such requirement is contained in the guidelines or the commentary.  Hinojosa extracts this requirement from language quoted from an opinion dealing with aggregation of offenses for criminal history purposes.  See United States v. Alvarado-Santilano, 434 F.3d 794, 799 (5th Cir. 2005).   The issue in Alvarado-Santilano was whether the defendant's offense of conviction for illegal reentry after deportation was relevant conduct to a prior offense for false claim of citizenship for purposes of determining his criminal history level.  In response to a weak argument by the defendant that the two crimes shared a common purpose and create the same social harm, the court stated "The government argues, however, 'scheme' and 'plan' are 'words of intention, implying that the [offenses were] jointly planned, or at least that it would have been evidence that the commission of one would entail the commission of the other as well.'" Id. , citing United States v. Robinson, 187 F.3d 516, 520 (5th Cir. 1999), which in turn quotes from United States v. Ali, 951 F.2d 827, 828 (7th Cir. 1992).  Both Robinson and Ali address the question whether  multiple prior convictions should be grouped as "related cases" under U.S.S.G. § 4A1.2(a)(2).  U.S.S.G. § 4A1.2(a)(2) groups prior offenses as related cases if they are part of a "single common scheme or plan" to determine a defendant's criminal history.  In  United States v.

7

<u>Yerena-Magana</u>, ___ F.3d __, 2007 WL 441873 (5th Cir. Feb. 12, 2007), we specifically held that the inquiry whether prior sentences were sentences imposed in related cases within the meaning of § 4A1.2(a)(2) is a different inquiry from whether a prior sentence includes conduct that is part of the charged offense, which focuses on relevant conduct by reference to § 1B1.3. U.S.S.G. § 4A1.2(a)(1).

To the extent <u>Alvarado-Santilano</u> is helpful in analyzing this case, we do not read the opinion as holding that joint planning or interdependence of offenses are necessary requirements for two offenses to be relevant conduct. Such findings would certainly support a conclusion that two offenses are part of a common scheme or plan, because joint planning and interdependence would likely also involve common victims, accomplices or purpose between the offenses. However, the guidelines only require that the two offenses "be substantially connected to each other by at least one common factor." As we conclude later in this opinion, that requirement is clearly met in this case.

For two or more offenses to be part of a common scheme or plan they must be substantially connected by at least one common factor. U.S.S.G. § 1B1.3, commentary n.9. In this case, the Solegasa del Norte scheme and the charged frauds were linked by two factors - a common purpose and a similar modus operandi. The purpose of both schemes was to defraud victims in an investment scheme. Although there was no commonality among Hinojosa's victims or accomplices, the schemes, as Hinojosa concedes, had a similar modus operandi. In both, Hinojosa set up a classic Ponzi scheme using a professional (C.P.A. or attorney) to give the scheme the appearance of legitimacy. Both schemes used hired solicitors to promote the scheme and sell the phony investment products to investors promising high rates of return in a short

8

period and claiming relationships with international banks. After reviewing the record, other differences between the two schemes are not enough to leave us with the definite and firm conviction that a mistake has been made by the district court in treating these two offenses as relevant conduct for purposes of sentencing.[1] See United States v. Buck, 324 F.3d 786, 796-97 (5th Cir. 2003)(Defendant used a nonprofit rural development organization to defraud two different government programs of social services funds, making similar certifications that the organization would abide by the requirements of the programs, and then using the funds for the operation of the organization, rather than the limited purposes for which the grants were specified. Despite "obvious differences" between the two crimes, no clear error in treating them as part of a common scheme or plan. ) Based on these facts, we cannot say that the district court clearly erred in its conclusion that the charged offense and the Solegasa Del Norte scheme were part of a common scheme or plan.

IV.

Hinojosa also argues that the district court misapplied the Sentencing Guidelines and reversibly erred by determining the value of funds for purposes of the enhancement under U.S.S.G. § 2S1.1(b)(2) based on internally inconsistent information in the PSR. The government counters that the two sources Hinojosa refers to measure different things. One is a list with the adjusted loss amount per victim (net of any funds recovered) for purposes of victim impact at sentencing. The other reflects the total value of the funds laundered, which is the appropriate

_____

[1] Hinojosa emphasizes the length of time between the scheme charged in the offense of conviction and the Solegasa del Norte scheme. The "time interval between offenses" is more relevant to determine whether two offenses are part of the "same course of conduct." U.S.S.G. § 1B1.3, comment 9(B). The time interval between the two schemes in this case does not prevent them from being part of a common scheme or plan.

measure for the sentencing enhancement when a defendant is sentenced for a money laundering offense. U.S.S.G. § 2S1.1; United States v. Allen, 76 F.3d 1348, 1369 (5th Cir. 1996). Essentially, Hinojosa is comparing apples to oranges. Under the plain error standard, which applies because Hinojosa raises this objection for the first time on appeal, we find no basis for overturning the district court's determination of the total value of the funds laundered. United States v. Fernandez-Cusco, 447 F.3d 382, 384-85 (5th Cir. 2006).

V.

The district court's judgment ordered restitution of net losses attributable to the offense of conviction plus $3.1 million attributable to the Solegasa del Norte transactions in 2002, for a total of $6,659,493.90. Hinojosa argues that the district court erred in including the $3.1 million from the Solegasa scheme because that scheme was outside the scope of the indictment and inconsistent with the understanding of the parties to the oral plea. The government conceded error on this point at oral argument. Accordingly, we must vacate the sentence to permit the district court to reduce the restitution order by deleting the amount involved in the Solegasa del Norte scheme.

In a related argument, Hinojosa contends that the district court failed to consider his financial circumstances when it ordered a restitution payment schedule. Because the district court did not explicitly consider Hinojosa's financial circumstances when ordering a restitution schedule, on remand the district court is reminded to do so in setting the restitution payment schedule as set forth at 18 U.S.C. § 3664(f)(2).

VI.

For the foregoing reasons, Hinojosa's sentence is VACATED and REMANDED to the

10

district court for resentencing consistent with this opinion.

AFFIRMED in part.

VACATED in part.

REMANDED.