# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-10116

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

TAWANA LYNN HOWARD

Defendant-Appellant

Appeal from the United States District Court for the
Northern District of Texas, Abilene Division
USDC No. 1:06-cr-0017-C

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Defendant-Appellant Tawana Lynn Howard ("Howard") appeals from the sentence imposed by the district court after her guilty plea to wire fraud. Howard first challenges the district court's calculation of victim losses, relevant to both the applicable length of imprisonment and the amount of required restitution. Howard also challenges the district court's determination of her criminal history category. For the reasons set forth below, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Tawana Lynn Howard placed her unborn child up for adoption through three agencies and received money from them and from their clients but after the baby's birth Howard refused to proceed with any adoption and kept the baby. She was charged by indictment with three counts of wire fraud, in violation of 18 U.S.C. § 1343, and five counts of mail fraud, in violation of 18 U.S.C. § 1341. She pleaded guilty to one count of wire fraud.

The Pre-Sentence Report ("PSR") assigned Howard a base offense level of seven pursuant to U.S.S.G. § 2B1.1. The PSR determined that the amount of loss was $34,678.25 and six offense levels were added pursuant to § 2B1.1(b)(1)(D). Howard received a two-level reduction for accepting responsibility for her crime, bringing the total offense level to 11.

In calculating Howard's criminal history, the PSR assigned two points for a forgery offense that occurred in April 1997 and two more points for a similar forgery offense that occurred in May of the same year. Howard was given four total additional criminal-history points for three other convictions. The resulting eight-point total put Howard in criminal-history category IV. Her resulting guidelines sentence range was 24 to 30 months.

At sentencing Howard raised two relevant objections. The first was that the amount of victim losses cited in the PSR was too high. The second was that the two forgery offenses considered in the criminal history calculation should have been treated as related offenses which would have reduced her criminal history category to III instead of IV. The district court overruled Howard's objections and adopted the PSR as amended. Howard was sentenced to imprisonment for a term of 24 months, with that term to run consecutive to any sentence imposed in state-court proceedings. She was also ordered to pay restitution in the amount of $34,678.25, the amount of victim losses calculated in the PSR. Howard timely appealed.

II.

Howard raises the same two issues on appeal that she raised in the district court. We consider each issue below.

A.

Howard argues first that the district court erred in assessing the victim losses at $34,678.25 both for calculating her criminal history score and for restitution. A district court's factual findings at sentencing are reviewed for clear error and its legal analysis is reviewed de novo. United States v. Olis, 429 F.3d 540, 545 (5th Cir. 2005) (citing Nixon v. Epps, 405 F.3d 318, 322 (5th Cir. 2005)). An amount of loss determination is reviewed for clear error. United States v. Edwards, 303 F.3d 606, 645 (5th Cir. 2002); United States v. Morrow, 177 F.3d 272, 301 (5th Cir. 1999). The legality of the district court's order of restitution is reviewed de novo. United States v. Hughey, 147 F.3d 423, 436 (5th Cir.), cert. denied, 525 U.S. 1030 (1998). "Once we have determined that an award of restitution is permitted by the appropriate law, we review the propriety of a particular award for an abuse of discretion." Id. (internal citation omitted).

This Court must first determine whether the method of calculating the amount of loss was legally acceptable. Olis, 429 F.3d at 545 (citations omitted). Assuming that its methodology is correct, the sentencing court enjoys wide latitude in making its estimate of loss. United States v. Cothran, 302 F.3d 279, 287 (5th Cir. 2002). Absent credible rebuttal evidence, the sentencing court may adopt the PSR as its own. United States v. Valles, 484 F.3d 745, 759 (5th Cir. 2007).

Loss is the greater of actual or intended loss. U.S.S.G. § 2B1.1, cmt. n. 3(A). Actual loss means the reasonably foreseeable pecuniary harm that resulted from the offense. Id. at cmt. n. 3(A)(I). Reasonably foreseeable pecuniary harm means pecuniary harm the defendant knew or should have known was a potential result of the offense. Id. at cmt. n. 3(A)(iv). The

3

defendant is responsible at sentencing for losses caused directly by the offense conduct. Olis, 429 F.3d at 546 (citation omitted). Loss for sentencing purposes, however, generally does not include the victim's consequential or incidental losses. United States v. Izydore, 167 F.3d 213, 223 (5th Cir. 1999).

Howard asserts first that the Government failed to present any witnesses or documentation to establish the amount of loss. Therefore it failed to meet its burden of proving the amount of loss. The district court, however, made a reasonable estimate of the loss based on reliable evidence set forth in the PSR. Because Howard did not show that the information contained in the PSR was not materially untrue, inaccurate, or unreliable, the district court did not clearly err in adopting the PSR at sentencing.

Howard also argues that the losses of "Couple A," the first family to whom she promised her unborn child, should not be included in the victim loss calculation because she always intended to give the baby to this family and was prevented from doing so only because the father refused to terminate his parental rights. Because she intended to place her child for adoption with "Couple A," her argument continues, no offense conduct committed by Howard directly caused the losses "Couple A" experienced in attempting to adopt. This argument is unavailing, however, because Howard stated at sentencing that she intended to place her child for adoption with "Couple B," not "Couple A," and never intended to cause loss to "Couple B," not "Couple A." The district court made no explicit credibility determinations on this point, but when it adopted the PSR over Howard's objections it implicitly rejected Howard's testimony that she did not intend to cause "Couple B" any loss. Cf. United States v. Richardson, 998 F.2d 1014 (5th Cir. 1993) (unpublished opinion). Howard's present argument, that it was "Couple A" and not "Couple B" that she never intended to cause any loss, reinforces the district court's decision to ignore her testimony in

this respect. We decline to consider Howard's inconsistent argument made to us for the first time on appeal, which in any event is unpersuasive.

Howard argues finally that the attorneys' and agency fees expended by "Couple B" and "Couple C" should not be included in the victim loss calculation or restitution because they are collateral expenses that are incidental or consequential. It is true that generally the calculation of loss does not include the victim's consequential or incidental losses. Izydore, 167 F.3d at 223. A defendant is responsible, however, for any reasonably foreseeable pecuniary harm caused by the offending conduct. See U.S.S.G. § 2B1.1, cmt. n. 3(A)(I). Howard points to a Seventh Circuit decision that held that attorneys' fees incurred in mitigating damages of a fraudulent scheme are consequential in nature. See United States v. Seward, 272 F.3d 831, 839 (7th Cir. 2001). This Court, however, has held that when attorneys' fees are part of the fraudulent conduct they are not consequential in nature. See United States v. Mikolajczyk, 137 F.3d 237, 245 (5th Cir. 1998). Here, the money expended by the families for adoption agency fees, attorney's fees, and travel costs were directly caused by Howard's actions and were reasonably foreseeable to her. As such, the district court did not err in including these costs in determining Howard's sentence.

Similarly, for restitution purposes, legal fees incurred by a victim of fraud must ordinarily be excluded from the calculation of loss. United States v. Onyiego, 286 F.3d 249, 256–57 (5th Cir. 2002). As stated above, the record reflects that all the legal fees paid by the three families included in the restitution calculation were an integral part of the adoption process. As such, Howard should have foreseen that the victims would incur these costs to adopt the child. As such, the district court did not err in including these fees as victim losses for purposes of restitution.

B.

Howard next argues that the district court erred in refusing to consider her two prior forgery convictions as related. Generally, application of the sentencing guidelines is a question of law subject to de novo review. United States v. Villegas, 404 F.3d 355, 361–62 & n.7 (5th Cir. 2005). This Court reviews the finding that prior convictions are not related de novo. United States v. Robinson, 187 F.3d 516, 519 (5th Cir. 1999). The determination of whether convictions were functionally consolidated for trial or sentencing is a question of fact that is reviewed for clear error. See Buford v. United States, 532 U.S. 59, 66 (2001).

The Guidelines provide that, in assessing a defendant's criminal history points, "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of §§ 4A1.1(a), (b), and (c)." U.S.S.G. § 4A1.2(a)(2). The commentary to § 4A1.2(a)(2) defines "related cases" as follows:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan or (C) were consolidated for trial or sentencing.

Id., cmt. n.3.

Howard first argues that the fact that there was no intervening arrest between the two forgery charges compels the conclusion that the forgeries should be considered related for purposes of criminal history calculation. The record reflects that Howard negotiated the second check seven days after the first check. The checks were drawn on different accounts, for different amounts, and negotiated to two different payees. Howard's argument is foreclosed by this Court's decision in Hayes, which holds that the lack of an intervening arrest between prior convictions does not preclude a finding that the two convictions

6

are not related.  See United States v. Hayes, 342 F.3d 385, 388–89 (5th Cir. 2003).

Howard next argues that the two forgeries occurred on the same occasion and were part of a single common scheme or plan.  This Court has held that two offenses may have occurred on the same occasion where they occurred sequentially and close-in-time.  See United States v. Moreno-Arrendondo, 255 F.3d 198, 207 (5th Cir. 2001).  The two check forgeries, however, occurred seven days apart from each other, and are thus not close-in-time such that they should be considered related offenses.  Additionally, the fact that prior offenses are factually and temporally close is insufficient to establish a common scheme or plan.  See United States v. Garcia, 962 F.2d 479, 482 (5th Cir. 1992), abrogated on a different ground by Buford, 532 U.S. at 63, 66; see also United States v. Mota-Aguirre, 186 F.3d 596, 600 (5th Cir. 1999).  To be sure, similar offenses are not necessarily part of a common scheme or plan.  See United States v. Ford, 996 F.2d 83, 86 (5th Cir. 1993).  Here, the two forged checks were written seven days apart, the victims were different, the checks were written for different amounts, and although Howard received identical and concurrent punishments the cases were never formally consolidated and retained distinct case numbers.  The two check forgeries were similar crimes but that they were not  part of a common scheme or plan such that they should be considered related offenses for purposes of criminal history calculation.

Lastly, Howard argues that the two forgeries were "functionally" or "informally" consolidated.  Although it is true that identical concurrent sentences were imposed for the two forgeries, this does not compel a finding of functional consolidation.  United States v. Huskey, 137 F.3d 283, 288 (5th Cir. 1998).  Thus, the district court did not err in determining that Howard's Texas convictions for fraud were not consolidated.

III.

For the foregoing reasons the sentence of Howard is affirmed.


AFFIRMED.