# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2022

Lyle W. Cayce
Clerk

No. 20-20283

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SERGIO FERNANDO LAGOS,

*Defendant—Appellant*.

Appeal from the United States United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-3559

Before DAVIS, WILLETT, and OLDHAM, *Circuit Judges*.
DON R. WILLETT, *Circuit Judge*:

Sergio Fernando Lagos urged the district court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel during sentencing. The district court denied Lagos's motion, and for the reasons explained below, we AFFIRM.

I

Lagos pleaded guilty in 2015 to one count of conspiracy to commit wire fraud and five counts of wire fraud, in violation of 18 U.S.C. §§ 2, 1343, and 1349. Lagos was the owner and CEO of U.S.A. Dry Van Logistics, LLC

No. 20-20283

(USADV), a company that provided cross-border trucking services to the maquiladora industry. He entered into a loan financing agreement on behalf of USADV with General Electric Capital Corporation (GECC), a nonbank lender, under which GECC extended a revolving line of credit secured by USADV's accounts receivable. The maximum sum that could be borrowed under the agreement was based on the amount of USADV's eligible accounts receivable. From around March 2008 at least until January 2010, Lagos and his co-conspirators engaged in a wire fraud scheme whereby they induced GECC to extend a $35 million line of credit by fraudulently inflating USADV's accounts receivable. As a result of USADV's admitted "substantial overstatement in . . . Eligible Accounts," GECC had extended a "significance [sic] overadvance" under the loan agreement.[1] Consequently, USADV declared bankruptcy several days after GECC learned of the fraud, explaining to the bankruptcy court that the company's "need" for financing and the "unlikelihood of finding other sources of financing given the significant overadvance position of [GECC]" made a bankruptcy proceeding USADV's "only realistic option."[2]

Following Lagos's 2015 guilty plea, the district court sentenced him to 97 months' imprisonment and three years of supervised release and ordered him to pay a $600 special assessment and $15,970,517.37 in restitution. On direct appeal, Lagos challenged only the amount of restitution ordered, arguing that the restitution statute did not authorize the court to order restitution for GECC's legal, expert, and consulting fees incurred in investigating the fraud or its legal fees from the bankruptcy proceedings caused by the fraud. We rejected Lagos's argument, but the Supreme Court

---

[1] *In Re USA Dry Van Logistics, L.L.C.,* No. 10-20102, Dkt. 12, at 5 (Bankr. S.D. Tex. Feb. 2, 2010).

[2] *Id.* at 7–8.

2

agreed with him and reversed.[3] In accordance with the Supreme Court's decision, we subsequently remanded "to the district court with instructions to delete from [Lagos'] restitution order $4,895,469.73" in improperly included fees.[4] The district court entered its amended judgment on September 19, 2018, imposing restitution in the amount of $11,075,047.64.

Lagos initiated this postconviction proceeding shortly thereafter. He moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that his counsel was ineffective for failing to properly object during sentencing when $4.3 million in court-ordered payments that GECC had made during USADV's bankruptcy proceeding were included in the court's calculation of the "actual loss" caused by Lagos's fraud—a calculation that plays a role in a court's application of the Federal Sentencing Guidelines.[5] According to Lagos's § 2255 motion, his counsel performed deficiently in failing to argue that the $4.3 million sum "did not constitute an 'actual loss' that was directly caused by the fraud."[6] Such an objection, according to Lagos, clearly would have been meritorious because the $4.3 million in court-ordered payments made by GECC were not a reasonably foreseeable result

---

[3] *See United States v. Lagos*, 864 F.3d 320 (5th Cir. 2017), *rev'd and remanded,* 138 S. Ct. 1684 (2018).

[4] 735 F. App'x 171 (5th Cir. 2018).

[5] The Guidelines set forth appropriate ranges of sentences for economic crimes depending on the "actual loss" caused by a defendant's wrongdoing (or "intended loss," whichever is greater, though there was no calculation of intended loss in Lagos's case); importantly, however, "actual loss" is defined to include only "reasonably foreseeable pecuniary harm that resulted from the offense"—that is, the "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1, comment. (n.3(A)).

[6] During sentencing, Lagos's counsel objected to inclusion of the $4.3 million sum in the loss calculation only the ground that it "constituted 'interest' or 'penalty'" of the kind excluded from "actual loss" calculations under the Sentencing Guidelines—an objection that, as all parties now concede, was meritless.

No. 20-20283

of his fraud, and therefore were not "actual loss" for purposes of the Sentencing Guidelines. But because this sum was wrongly included in the calculation of loss, the sentencing court determined that the applicable Sentencing Guideline range was 97-121 months' imprisonment; had this sum been excluded, Lagos contends, the court would have applied the correct Guideline range of 78-97 months.

The district court denied § 2255 relief. First, the court found that GECC's $4.3 million in court-ordered advances were indeed a reasonably foreseeable result of Lagos's fraud, and thus were properly included in the "loss" calculation for Guidelines purposes. The failure of Lagos's sentencing counsel to object to the inclusion of this sum in the loss calculation did not prejudice Lagos because such an objection lacked merit anyway. Alternatively, the district court held that, even assuming the objection were meritorious, its merit was not obvious under existing law at the time of sentencing, and so sentencing counsel was not deficient for failing to raise the objection. Despite denying Lagos's motion for postconviction relief, however, the district court held that his claim had at least enough merit to warrant a certificate of appealability. Lagos subsequently appealed.

## II

On appeal from a denial of 28 U.S.C. § 2255 relief alleging ineffective assistance of counsel, we review the district court's factual findings for clear error and its legal conclusions de novo.[7] "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."[8] In assessing performance, we are "highly deferential"; we "evaluate the conduct from

---

[7] *United States v. Scott*, 11 F.4th 364, 368 (5th Cir. 2021).

[8] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

counsel's perspective at the time," "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[9]

Furthermore, even if it is established that counsel performed deficiently, an ineffective-assistance claimant still must show that he or she was prejudiced by counsel's errors in order to prevail. While "[i]t is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding," neither is a defendant required to "show that [the] deficient conduct more likely than not altered the outcome."[10] Rather, the defendant simply "must show that there is a reasonable probability"— that is, "a probability sufficient to undermine confidence in the outcome"— "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11] In cases such as this one, where the defendant alleges counsel performed deficiently during the sentencing phase, our inquiry (at least when collaterally reviewing federal convictions) is thus "[w]hether there [i]s a reasonable probability that, but for [counsel's] actions, [the defendant] would have received a lesser sentence than he did."[12]

In deciding ineffective-assistance claims, we may, at our discretion, consider either the "performance" or the "prejudice" element of the inquiry first.[13] Nor need we "address both components of the inquiry" if it is clearer that the defendant has "ma[de] an insufficient showing" as to one of them;

---

[9] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[10] *Id.* at 693.

[11] *Id.* at 694.

[12] *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

[13] *Strickland*, 466 U.S. at 697.

No. 20-20283

put differently, "[i]f it is easier to dispose of an ineffectiveness claim" on "prejudice" rather than "performance" grounds, or vice versa, then "that course should be followed."[14]

With these principles in mind, we now consider Lagos's argument that the district court that sentenced him improperly included in its "actual loss" calculation the $4.3 million in court-ordered advances GECC paid USADV during the latter's bankruptcy proceeding. Indeed, in Lagos's view, the court's mistake was so patent that his counsel was deficient in failing to raise the issue during sentencing.

Right out of the gate, however, Lagos's argument to this effect confronts an obstacle: the district court in this postconviction proceeding found that USADV's "bankruptcy was a reasonably foreseeable result of [Lagos'] fraud," and accordingly held that "the court-ordered advances were therefore properly included in the amount of loss." Our precedent establishes that a district court's determination of "loss" under the Sentencing Guidelines is a factual finding of the sort that we review for clear error.[15] This applies not only to our "review [of] the loss calculation itself," but also to the district court's finding as to "the foreseeability of the loss."[16] Applying the clear-error standard, "[w]e give considerable deference to a district court's factual findings at sentencing," and will sustain them "as long as [they are] plausible in light of the record read as a whole."[17] The Guidelines' official Commentary—which "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly

---

[14] *Id.*

[15] *See United States v. Ayelotan*, 917 F.3d 394, 408 (5th Cir. 2019).

[16] *Id.*

[17] *United States v. Krenning*, 93 F.3d 1257, 1269 (5th Cir. 1996).

erroneous reading of, th[e] guideline" to which it relates[18]—makes this abundantly clear: the district "court need only make a reasonable estimate of the loss," and that "determination is entitled to appropriate deference."[19]

In this case, we think that the district court did not clearly err in finding that the $4.3 million in court-ordered payments made by GECC was a reasonably foreseeable result of Lago's fraud. Considering the sheer scale of the fraudulent scheme, through which USADV secured over $26.2 million in loans to which it was not entitled by overstating its accounts receivable, the company's bankruptcy should have been a reasonably foreseeable prospect; indeed, by the time the scheme was discovered, "it was estimated that approximately $10,540,188.75, of the $37,266,037.49, accounts receivable on USADV books were legitimate." Our sister circuits, when confronted with similar facts, have held that convicted fraudsters whose wrongdoing precipitated the bankruptcy of the companies they ran could be held accountable under the Sentencing Guidelines for bankruptcy-related losses, as such losses were among the "reasonably foreseeable" consequences of their crimes.[20]

Lagos protests that, even if "Dry Van's bankruptcy was probable at the time of Lagos' fraud . . . , the bankruptcy court's subsequent order

---

[18] *Stinson v. United States*, 508 U.S. 36, 38 (1993).

[19] U.S.S.G. § 2B1.1, comment. (n.3(C)).

[20] § 2B1.1, comment. (n.3(A)). *See United States v. Rubashkin*, 655 F.3d 849, 868 (8th Cir. 2011) ("Any reasonable person could have foreseen that large scale fraud could lead to collapse and insolvency if discovered."); *United States v. Jackson*, 524 F.3d 532, 547 (4th Cir. 2008), *vacated on other grounds,* 555 U.S. 1163 (2009). Although the defendants' sentencing in *Jackson* was governed by a prior version of the Guidelines that did not include the "foreseeability" language, the defendants there made a "foreseeability" argument on appeal on the incorrect assumption that the current Guidelines governed—an argument that the court considered (and rejected) even while noting the mistaken premise on which it rested. *See* 524 F.3d at 547 n.20.

requiring GECC to advance $4.3 million to enable Dry Van to transact business was not probable; at most, it was possible." This argument "confuses the foreseeability of *harm* with the foreseeability of the *manner* in which harm ultimately occurs. The foreseeability inquiry turns on whether 'harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person.'"[21] Here, the district court reasonably found that a reasonably foreseeable result of Lagos's fraud was USADV's bankruptcy. Bankruptcy proceedings entail all manner of expenses, for both an insolvent company as well as for its creditors. It was foreseeable that USADV's bankruptcy would impose costs of some kind on GECC, USADV's main creditor. Whether those costs were imposed precisely in the form of court-ordered advances, or instead in the form of some other expense, is not important to the foreseeability inquiry—or at least it was not clear error for the district court below to have so concluded.

We note that, in a similar case considering the measurement of "loss" under the Sentencing Guidelines, the Second Circuit held that a district court had reasonably "determined that the scope of [a defendant's] criminal conduct included numerous misrepresentations to customers, and [that] these misrepresentations caused a loss of at least $40 million."[22] It was "not clearly erroneous" to hold that defendant responsible for the whole amount in applying the Guidelines: "Whether [he] could foresee the manner in which the $35 million would be snatched overseas as the fraud unwound is not decisive: the district court reasonably found that the risk of a 'total loss' was

---

[21] *United States v. Ruiz-Hernandez*, 890 F.3d 202, 211 (5th Cir. 2018) (quoting *In re Signal Int'l, LLC*, 579 F.3d 478, 492 (5th Cir. 2009)); *accord United States v. Metzger*, 233 F.3d 1226, 1227–28 (10th Cir. 2000); *United States v. Boyd*, 229 F.3d 1159 (9th Cir. 2000) (unpublished); *United States v. Passmore*, 165 F.3d 21 (4th Cir. 1998) (unpublished).

[22] *United States v. Levenson*, 314 F. App'x 347, 350 (2d Cir. 2008).

foreseeable generally, and the overall loss was of at least $40 million."[23] The same can be said here in support of the district court's findings.

In light of the foregoing, we conclude that an objection to the sentencing court's actual-loss calculation on "foreseeability" grounds would have lacked merit, and accordingly that Lagos was not prejudiced by his counsel's failure to raise this objection during his sentencing.[24]

\* \* \*

Alternatively, even if we were to assume that an objection on "foreseeability" grounds during Lagos's sentencing to the inclusion of the $4.3 million in the court's loss calculation would have been meritorious, it was not so obviously meritorious that counsel was deficient by *Strickland* standards for failing to raise it. While counsel is expected to raise "[s]olid, meritorious arguments based on directly controlling precedent,"[25] "effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground" for objecting to a ruling adverse to the defendant's interests.[26]

It is true, as Lagos now points out, that we held in 1999 that bankruptcy-related costs (specifically, costs associated with appointing a bankruptcy trustee) resulting from a business failure caused by the defendants' fraud were "consequential losses that cannot be considered in loss calculations under [the Guidelines]."[27] That case, however, was decided under a prior version of the Guidelines, which defined "'loss' as 'the value

---

[23] *Id.*

[24] *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[25] *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999).

[26] *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998).

[27] *United States v. Izydore*, 167 F.3d 213, 223 (5th Cir. 1999).

of the money, property, or services unlawfully taken.'"[28] "Thus," we reasoned, because "the definition of loss [wa]s centered on the value of the thing taken, without reference to consequential or incidental losses," the bankruptcy trustee's fees were not properly included.[29]

However, as we have explained, the current Guidelines (in effect since 2001) define "loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense."[30] To the extent our holding in *Izydore* would exclude any reasonably foreseeable losses resulting from a defendant's fraud, then, we think that case has been superseded by changes to the Guidelines.[31]

For these reasons, we do not agree with Lagos that his counsel was deficient at sentencing for "failing to cite directly controlling precedent" that would have supported an objection to the loss calculation on "foreseeability" grounds.[32] By the time of Lagos's sentencing in 2016, *Izydore* had been partially superseded such that it was no longer the kind of inarguably "pellucid and applicable" precedent that counsel was constitutionally

---

[28] *Id.* (quoting U.S.S.G. § 2F1.1).

[29] *Id.*

[30] § 2B1.1, comment. (n.3(A)).

[31] *See United States v. May*, 706 F.3d 1209, 1214 n.3 (9th Cir. 2013) ("the 2001 Sentencing Guidelines amendment defining 'loss' under § 2B1.1 as "the reasonably foreseeable pecuniary harm that resulted from the offense" abrogated [cases] holding that 'loss' does not encompass 'consequential losses.'"); JEFRI WOOD, FEDERAL JUDICIAL CENTER, GUIDELINE SENTENCING: AN OUTLINE OF APPELLATE CASE LAW ON SELECTED ISSUES 111 (2002) (noting that *Izydore* "may no longer be valid precedent under the current 'reasonably foreseeable' standard."); *cf. United States v. Setser*, 568 F.3d 482, 497 (5th Cir. 2009) (A defendant's "ability to foresee the losses is the critical point."). To the extent our unpublished opinion in *United States v. Howard*, 262 F. App'x 571, 573 (5th Cir. 2008), cited *Izydore* with approval for the proposition that "loss" under the current Guidelines does not include consequential loss, we disapprove it.

[32] *Williamson*, 183 F.3d at 463.

obligated to bring to the court's attention.[33] Although this court had never so held, it should be clear upon reading the *Izydore* opinion that its reasoning would likely apply with limited force following the 2001 amendments to the Sentencing Guidelines. "We have repeatedly noted that *Strickland*['s performance prong] presents a stringent, rigorous test,"[34] and that the sort of "directly controlling precedent" that counsel is expected to discover "is rare" given that "factual differences will make authority easily distinguishable, whether persuasively or not."[35] This case does not represent one of those rare instances.

Although Lagos's counsel at sentencing could have argued under the current Guidelines (without relying on *Izydore*) that the $4.3 million in court-ordered payments was not a "reasonably foreseeable" result of Lagos's fraud, such an argument, as we have already discussed, either lacked merit, or was at least doubtful enough that counsel was not deficient for failing to make it.[36]

---

[33] *Id.* at 463 n.7.

[34] *United States v. Fields*, 565 F.3d 290, 297 (5th Cir. 2009).

[35] *Williamson*, 183 F.3d at 463 n.7.

[36] *See id.* ("[I]t is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed."). Lagos argues, in response to the district court's holding regarding his counsel's performance at sentencing, that counsel "did not contend in his affidavit that he made a strategic decision to forego this objection," but instead "acknowledged that the advances in the bankruptcy proceeding should not have been included in the loss amount for reasons beyond whether they could be characterized as late fees or penalties." Counsel's after-the-fact admission, however, does not affect our analysis. "Although courts may not indulge '*post hoc* rationalization' for counsel's decisionmaking . . . , neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. . . . After an adverse verdict at trial even the most experienced counsel may find it difficult to resist . . . magnify[ing] their own responsibility for an unfavorable outcome. *Strickland,* however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 109–10 (2011) (quoting *Wiggins*, 539 U.S. at 526–527).

## III

In sum, Lagos's counsel was not deficient at sentencing for failing to object to the sentencing court's loss calculation on "foreseeability" grounds. And even were we to assume he performed deficiently in failing to do so, the objection lacked merit such that counsel's failure to make it did not prejudice Lagos. The judgment of the district court is accordingly AFFIRMED.

---

We have thus noted that "even if trial counsel admit[s] that she did not contemplate the full import of her decision" after all is said and done, this fact is not dispositive. *Murphy v. Davis*, 732 F. App'x 249, 263 (5th Cir. 2018). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam). Hence, "[t]he relevant question is whether *some* reasonable lawyer could have pursued the challenged course of action," *Reaves v. Sec'y, Fla. Dep't of Corr.*, 717 F.3d 886, 901 n.9 (11th Cir. 2013) (int'l quotes/cites omitted), and here we have concluded that the answer is "yes." *See also Sands v. Lewis*, 511 F. App'x 608, 610 (9th Cir. 2013).